**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 1/17/97**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

    v.

RAY WILLIAM OLSON, also known
as Robert G. Johnson, also known as
Bob Johnson, also known as Andrew J.
Johnson, also known as Logan Counts,

       Defendant - Appellant.

No. 95-1522

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. Nos. 94-CR-310-Z & 94-CR-405-Z)**

---

Raymond P. Moore, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs), Denver, Colorado, appearing for the Appellant.

Gregory C. Graf, Assistant U.S. Attorney (Henry L. Solano, United States Attorney, with him on the brief), Denver, Colorado, appearing for the Appellee.

---

Before TACHA, HENRY, and BRISCOE, Circuit Judges.

---

TACHA, Circuit Judge.

---

In a period of six years, Ray Olson defrauded over 800 people of $6,097,155 by falsely representing that their money would be invested in securities and commodities. After federal grand juries in Louisiana and Colorado indicted Olson, he pleaded guilty to one count of mail fraud, one count of wire fraud, and one count of money laundering. As part of his sentence, the district court ordered Olson to pay $6,097,155 in restitution to his victims.

Olson seeks review of two issues on appeal. First, Olson contends that the district court abused its discretion in ordering him to pay $6,097,155 as restitution. Specifically, Olson argues that he lacks any assets or earning potential sufficient to create a realistic possibility that he can pay full restitution. Olson maintains that the district court imposed the restitution order by speculating that the defendant may have some assets unknown to the court. Second, Olson argues that the record does not provide a factual basis to support the district court's restitution order. Thus, Olson claims that we cannot reasonably review the propriety of the restitution order. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

From June 1987 to June 1989, Olson lived in Louisiana where he defrauded approximately 120 people by falsely representing that he would invest their money in securities and commodities. Instead of investing the money as

promised, Olson used the money for his personal expenses. Over the two year period, Olson obtained $2,697,065 through his fraudulent scheme.

In 1989, Olson fled to Colorado where he assumed the identity of "Robert Johnson." From June 1989 through the spring of 1993, Olson defrauded approximately 700 people of $4,178,698. The Colorado scheme differed from the Louisiana scheme in two ways. First, in Colorado Olson used several individuals (Kathleen Jardine, Vanita West, and Wallace Drew) to solicit and collect money from the investors on his behalf. Second, Olson transferred much of the money from Colorado to offshore bank accounts.

On May 21, 1992, the government filed a ten-count indictment against Olson in the Western District of Louisiana. On December 8, 1994, the government filed a twenty-six count indictment against Olson in the District of Colorado.

On September 5, 1995, the Louisiana case was transferred to Colorado. On September 18, 1995, pursuant to a plea agreement, Olson pleaded guilty to one count of wire fraud, one count of mail fraud, and one count of money laundering. He agreed to pay a minimum of $130,420 in restitution and to assign all of his interest in his bank accounts and other assets to the government. He admitted however, that he "used several bank accounts and offshore accounts in the Bahamas, as a repository of investor funds."

On October 23, 1995, the district court held a sentencing hearing on the issue of restitution. The record indicates that Olson and his associates placed approximately $3-$4 million in various bank accounts. For example, Olson controlled approximately $1.7 million in a bank account in the Bahamas called the "Goldwing" account. Olson also maintained a bank account in Mexico City containing $300,000 to $400,000 and a bank account in Vanuatu, an island near New Zealand.

Olson employed a Bahamian lawyer, Cyril Fountain, to help him start several Bahamian companies and open Bahamian bank accounts in the name of the companies. Fountain, however, considered Olson to be the "beneficial owner" of these accounts. Olson's associates (Jardine, West, and Drew) used a similar approach to launder their money. Jardine started a company called "Relas Ltd." and opened a bank account in the company's name. West started a company called "Ouray Ltd." and opened an account in its name. Drew started a company called "Columbine Ltd."and opened a bank account in its name.

At the restitution hearing, Fountain testified on behalf of Olson. Fountain testified that he kept $88,860 in cash in his law firm safe for Olson. Fountain then turned over $193,188 to the government on behalf of Olson ($88,860 from the law firm safe and $101,328 from the Goldwing account). Fountain also brought corporate records for all of the companies for which Olson was the

"beneficial owner." Fountain, however, did not bring any bank records for the companies. He also did not know the remaining balances in the bank accounts of any of the companies.

On November 27, 1995, the court sentenced Olson to 87 months imprisonment and three years of supervised release. In addition, the court imposed a restitution order in the amount of $6,097,155. The figure represented the amount misappropriated by Olson in both the Louisiana and Colorado schemes minus $415,988 in restitution that Olson had already made to his victims.[1] The court however, recognized that the amount of restitution might be lowered after the government finished tracing all of Olson's bank records and assets.

## DISCUSSION

### I.      Amount of Restitution

We review the district court's factual findings underlying a restitution order for clear error. United States v. Teehee, 893 F.2d 271, 273-74 (10th Cir. 1990). We review the amount of a district court's restitution order for an abuse of discretion. United States v. Rogat, 924 F.2d 983, 985 (10th Cir.), cert. denied, 499 U.S. 982 (1991).

---

[1]In addition to the $193,188 that Fountain turned over to the government, Olson had assets that, when liquidated, brought the amount of money recovered to $415,988.

The Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663-64 governs the restitution order at issue in this case.[2]  When determining the appropriate amount of restitution, a sentencing court "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."  18 U.S.C. § 3664(a).  The fact that a defendant is without financial resources at the time of sentencing is not itself a bar to a restitution order.  United States v. Gabriele, 24 F.3d 68, 73 (10th Cir. 1994).  A restitution order, however, must be consistent with a defendant's ability to pay.  United States v. Gilbreath, 9 F.3d 85, 86 (10th Cir. 1993).  Thus, "[a] restitution order will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered."  Rogat, 924

---

[2]The Mandatory Victims Restitution Act of 1996 ("MVRA"), which was enacted on April 24, 1996, as Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amended the VWPA.  Pursuant to the MVRA, "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  The new provision does not apply in this case because Title II provides that "[t]he amendments made by [subtitle A] shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of this Act."  18 U.S.C. § 2248 (quoting Pub. L. No. 104-132, § 211, 110 Stat. 1214, 1241).  Accordingly, statutory citations in this opinion refer to the VWPA provisions in effect before the passage of the MVRA.

F.2d at 985 (emphasis added).  Moreover, the burden is on the defendant to prove that he lacks the ability to pay full restitution.  18 U.S.C. § 3664(d).

Today we hold that when a defendant has secreted proceeds from an illegal activity, the illegal proceeds are presumed assets of the defendant unless the defendant proves otherwise.  As the Third Circuit recently stated:

> [We] place the burden of proof on the defendant to show what has happened to all of the illegally obtained assets.  All assets for which the defendant cannot account may be included in the amount of restitution ordered.  To the extent that records are unavailable, the risk of inaccuracy should be borne by the defendant rather than the victims.

United States v. Voigt, 89 F.3d 1050, 1092 (3d Cir. 1996) (quoting United States v. Copple, 74 F.3d 479, 486 (3d Cir. 1996) (Alito, J., concurring) (citation omitted)), petition for cert. filed, (U.S. Nov. 12, 1996) (NO. 96-6732).  See also United States v. Lampien, 89 F.3d 1316, 1325 (7th Cir.1996) ("[I]f Lampien is unable to prove to the satisfaction of the district judge that she no longer possesses any part of the nearly one-half million dollars she embezzled, the judge may, in his discretion, consider the resulting amount as being available for purposes of restitution.").

As to Olson's financial condition, the record indicates that Olson obtained over $6 million in investor funds.  Approximately $5.6 million remains missing.  Olson did not deny that additional money might be recovered and did not claim that the missing money was exhausted maintaining an opulent lifestyle.  Olson

admitted that he and his associates maintained a number of bank accounts in the Bahamas and other countries. Though Olson had $415,988 in identifiable assets on the date of sentencing, the evidence indicates he had other assets that could possibly enable him to pay the amount ordered. See Rogat, 924 F.2d at 985. In fact, at sentencing, Olson stated:

> And wherever the money -- the money went into those accounts, and there should be a trail of where that money is. There is no doubt that when they get the bank information from the Bahamas, it will be very easy to trail that money and find out where it went. That's what we're waiting for, and that's something I haven't been able to get and they haven't been able to get, was the accounting from the banks of where that money was paid and where it went. As soon as that's sent to them, there is no doubt that they can follow that money and see where it went. . . . There should have been plenty of money to take care of [the victims], and I am surely sorry that they're not getting their money back.

In sum, under the facts of this case, Olson failed to meet his burden of showing that he could not make full restitution because he could not explain what happened to the $5.6 million he received from his victims. Thus, we hold that the district court did not abuse its discretion in ordering full restitution.

## II.    Factual Basis

The VWPA states that in determining the amount of a restitution order, the sentencing court must "consider" the defendant's financial condition in imposing restitution. 18 U.S.C. § 3664(a). "Although advisable to do so, the sentencing judge need not express explicit reliance on each of the mandatory factors."

United States v. Clemmons, 48 F.3d 1020, 1023 (7th Cir. 1995) (citation omitted), overruled on other grounds by United States v. Allender, 62 F.3d 909 (7th Cir. 1995). But "[w]hen there is substantial ambiguity as to whether the judge considered the statutory factors, specific factual findings in the record may be required for effective appellate review." Rogat, 924 F.2d at 986.

In this case, the record contains detailed information regarding Olson's financial condition and earning potential. The restitution and sentencing hearings focused entirely on Olson's use of offshore accounts and the location of the missing money. Thus, we conclude that the record demonstrated that the sentencing court sufficiently "considered" Olson's ability to pay in ordering the restitution order. Accordingly, we hold that the district court was not required to state why Olson failed to show that he could not satisfy the restitution order. The judgment of the district court is AFFIRMED.