**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 8 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENT CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID HICKS,

    Defendant - Appellant.

No. 98-6369

(D.C. No. 98-CR-47)

(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant David Hicks pleaded guilty to one count of conspiracy to defraud the United States by obtaining payment of false claims in violation of 18 U.S.C. § 286. He appeals the district court's order that he pay restitution in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the amount of $11,403.95, contending that the court erred in its finding that, given his age and education, he would be able to find employment and pay restitution upon his release from confinement.

During the period from January 1993 to December 1995 while incarcerated in state prison, Defendant participated in a scheme to prepare fictitious 1040EZ tax returns to fraudulently obtain income tax refunds.  Participants shared information used on the returns such as names, social security numbers, and addresses of fictitious filers, and involved others in cashing the fraudulently obtained refunds.   Defendant himself prepared or signed fourteen income tax returns which had false claims that resulted in an actual loss to the Internal Revenue Service of $11,403.95.

On March 19, 1998, the Government filed a one-count information charging Defendant with conspiracy to defraud the United States in violation of 18 U.S.C. § 286.  The defendant pleaded guilty, and on September 11, 1998, the district court filed its order entering judgment.  The court sentenced Defendant to twenty-seven months of imprisonment to be followed by three years of supervised release.  The court also ordered Defendant to make restitution to the IRS, payable immediately or in monthly installments of not less than $100 beginning no more than thirty days from his release from confinement.  The Government contended that the conspiracy involved a total intended loss of $216,000 and resulted in an

actual loss of $22,082.19. The district court found an actual loss of $11,403.95 attributable to Defendant and ordered restitution in that amount. See R., Vol. 1, Doc. 23 at 5, 8. The district court also waived any fine due to Defendant's inability pay both the fine and restitution. See id. at Doc. 22. Defendant timely filed a notice of appeal, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's factual findings supporting a restitution order for clear error. See United States v. Olson, 104 F.3d 1234, 1237 (10th Cir. 1997). We review the amount of the restitution order for abuse of discretion. See id.

Both parties seemingly agree that the Victim and Witness Protection Act [VWPA], 18 U.S.C. §§ 3663, 3664, in its version prior to amendment in 1996, governs this restitution order.[1] Under the VWPA restitution is not mandatory.

---

[1]In 1996, Congress amended the VWPA by enacting the Mandatory Victims Restitution Act [MVRA] which now requires mandatory restitution to the victims of certain crimes. See 18 U.S.C. § 3663A. The MVRA requires restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A). The MVRA is applicable to crimes defined under § 3663A(c) for cases in which the defendant is convicted on or after April 24, 1996, "to the extent constitutionally permissible." Id. § 2248 (Statutory Notes). This court has determined that it is constitutionally permissible to apply the MVRA when sentencing for a crime committed before the Act's effective date. See United States v. Nichols, 169 F.3d 1255, 1279-80 (10th Cir.), cert. denied, 120 S. Ct. 336 (1999). Reasoning that the "MVRA is not punitive in nature," the Nichols court held that its application is not prohibited by the Ex Post Facto Clause. Id. at 1279; accord United States v. Newman, 144 F.3d 531, 542 (7th Cir. 1998). But see United States v. Edwards, 162 F.3d 87, 91-92 (3d Cir. 1998); United States v.

Rather, when determining whether to order restitution and the appropriate amount of restitution, the court "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). Defendant argues that given his demonstrated indigence, his lack of work experience, and his criminal history, the court erred in determining that he would be able to find employment to pay restitution once released from custody.

A restitution order "must be consistent with a defendant's ability to pay," but a defendant's inability to pay at the time of sentencing "is not itself a bar." Olson, 104 F.3d at 1237 (citing United States v. Gabriele, 24 F.3d 68, 73 (10th Cir. 1994)). While a restitution order "cannot be based solely on chance," such as the possibility that a defendant might win the lottery, it "will be upheld if the

---

Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998); United States v. Bapack, 129 F.3d 1320, 1327 n.13 (D.C. Cir. 1997); United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997); United States v. Baggett, 125 F.3d 1319, 1322 (9th Cir. 1997); United States v. Thompson, 113 F.3d 13, 15 n.1 (2d Cir. 1997).

The conviction in this case appears to fall under § 3663A and § 3664 of the MVRA. However, both parties to this appeal apply the VWPA in its version prior to the effective date of the MVRA, and neither party has raised the issue of whether the MVRA governs the restitution order in this case. We therefore do not address this issue, and our citations in this opinion refer to the VWPA provisions in effect before April 24, 1996. We observe, however, that the district court's order in this case imposes restitution for the full amount of loss found, see R., Vol. 1, Doc. 23 at 8, a result compatible with the application of the MVRA.

evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered." United States v. Rogat, 924 F.2d 983, 985 (10th Cir. 1991) (citing United States v. Mitchell, 893 F.2d 935, 936 n.1 (8th Cir. 1990)).

The record in this case supports the district court's restitution order. The court found that Defendant was young and sufficiently educated to acquire employment after release that would allow him to pay restitution. It noted that Defendant had completed numerous college classes while incarcerated. In addition, the court adopted the factual findings of the Presentence Investigation Report which indicated that Defendant had received his General Equivalency Diploma in 1990 and had taken college classes through a "'talk back television'" program offered by Rose State College. R., Vol 3 at 11. The report also indicated that at the time of sentencing Defendant was still enrolled, working on an associate's degree in business administration, and had completed over forty credit hours during his incarceration.[2] He also had completed 135 hours in carpentry and 135 hours in drafting through a vocational training program while incarcerated. Because the record shows that Defendant has some earning potential, it is possible that he may be able to pay the amount ordered. See Olson,

_____

[2]While not verifiable, Defendant states in his brief that it is probable that he "will have completed a college degree prior to his release." Appellant's Br. at 6.

104 F.3d at 1237.

Defendant argues that his criminal record makes it unlikely that, despite his training, he will be able to find employment. While a criminal record may make it more difficult to secure employment, it does not make it impossible and does not show that the district court clearly erred in its factual determination that Defendant could pay restitution. To hold that a criminal record alone is sufficient to demonstrate that a defendant cannot secure employment would preclude any restitution order under the VWPA. Defendant's arguments fail to show that he will be unable to pay the $11,403.95 restitution order.[3] We conclude that the district court's factual findings supporting the restitution order are not clearly erroneous.

We further hold that the district court did not abuse its discretion in determining the amount of restitution. While the government presented evidence that the actual loss attributable to Defendant was $22,082.19, which included the loss attributable to Defendant's joint conduct with others in the conspiracy, the court limited restitution to the amount of loss attributable to fraudulent filings

---

[3]This case is distinguishable from cases where the amount of restitution ordered has been entirely beyond the means of the defendant to pay. See, e.g., United States v. Patty, 992 F.2d 1045, 1052 (10th Cir. 1993) (holding, in a case where defendant's liabilities exceeded $3.2 million, that the district court abused its discretion when it ordered restitution for an amount more than 100 times the defendant's pre-conviction annual earnings).

where Defendant himself filled out or signed forms. The court also waived a fine based on its determination that Defendant was unable to pay both a fine and restitution. Finally, as explained above, the record supplies some evidence that Defendant will be able to satisfy the restitution order. We conclude that the district court considered and balanced the evidence relating to the appropriate amount of restitution and did not abuse its discretion.

After submission of this appeal to the panel, we received Defendant's "Motion" entitled "Objection to Assigned Attorneys Representation." This motion requests an order dismissing Defendant's attorney or, in the alternative, an inquiry into the contentions Defendant raises in this motion, which include the following:

1. The plea agreement as entered in the record is not the plea agreement Defendant entered into at sentencing.

2. Assigned counsel said the sentence would run concurrently with his custodial state sentence.

3. The Assistant U.S. Attorney assured Defendant's attorney that his office would submit a "downward departure" (Defendant alleges that the U.S. Attorney's office submitted a downward departure for his codefendant).

4. Defendant was duped by his attorney who said he would straighten

out the matter and originally took Defendant's phone calls, but now avoids all contact with Defendant and Defendant's wife .

We deny Defendant's motion to dismiss his attorney and follow his alternative suggestion by treating his motion as a supplemental brief. Upon review of the plea agreement, which is part of the record on appeal, we conclude that it does not support Defendant's arguments. The plea agreement indicates that in exchange for the plea of guilty the Government agreed to make no recommendation as to the actual sentence to be imposed and to forego prosecution for any other violations involved in this scheme to obtain payments by filing false income tax returns. See R., Vol. 1, Doc. 19 at 2-3. The plea agreement further states that "[n]o agreement exists concerning a sentencing departure . . . or concerning a reduction of sentence." Id., Doc. 19 at 6. Additionally, the plea agreement includes this stipulation:

> The parties further agree that the United States has advised this defendant and his attorney that the matter of sentencing is entirely within the discretion of the sentencing court, subject to the Sentencing Reform Act of 1984 (Sentencing Guidelines), and that the United States has made no promises or representations to this defendant or his attorney regarding what sentence might be imposed.

Id., Doc. 19 at 7. Both Defendant and his attorney signed the agreement, and Defendant testified at the plea hearing that he voluntarily made the plea, understood its consequences, and understood that his sentence was subject to the court's discretion. See id., Vol. 2 at 8, 14.

While nothing in the record indicates whether Defendant's assigned counsel assured him that the sentence would run concurrently with the state sentence for which he was already incarcerated or whether the Assistant U.S. Attorney promised to seek a downward departure, Defendant did sign the plea agreement which indicated that it was "the only agreement between the United States and defendant, David Hicks, concerning his plea of guilty in the above-styled action, and that there are no other deals, bargains, agreements, or understandings which modify this agreement." Id., Vol. 1, Doc. 19 at 7-8.

After review, we conclude that there is no merit to Defendant's challenge to his sentencing based on the plea agreement. To the extent that Defendant raises an ineffective assistance of counsel claim either for misrepresentations or other error, we dismiss that claim without prejudice. Generally, a claim of ineffective assistance of counsel should be brought in a collateral proceeding pursuant to 28 U.S.C. § 2255 so that a proper record can be made. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge