125 F.3d 1319
 97 Cal. Daily Op. Serv. 7713, 97 Daily Journal
D.A.R. 12,370
UNITED STATES of America, Plaintiff-Appellee,
v.
Joann BAGGETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis BURNEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victoria HAYES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark GRZESCZUK, Defendant-Appellant.
 Nos. 96-50492, 96-50494, 96-50495 and 96-50515.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 5, 1997.
Decided Sept. 29, 1997.
 
 Karl A. Rupp and Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant Baggett.
 Barbara L. Davis, Law Office of Barbara L. Davis, San Diego, CA, for defendant-appellant Burney.
 Stephen D. Lemish, El Cajon, CA, for defendant-appellant Hayes.
 Grant L. Eddy, Ramona, CA, for defendant-appellant Grzesczuk.
 Julia Craig Kelety, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of California; William B. Enright, District Judge, Presiding. D.C. Nos. CR-95-01994-1-WBE, CR-95-01994-2-WBE, CR-95-01994-4-WBE and CR-95-01994-3-WBE.
 Before: HALL and T.G. NELSON, Circuit Judges, and WINMILL, District Judge.*
 CYNTHIA HOLCOMB HALL, Circuit Judge.
 
 
 1
 Defendants-appellants Joann Baggett, Curtis Burney, Victoria Hayes, and Mark Grzesczuk were convicted of multiple counts of aiding and abetting wire fraud. 18 U.S.C. §§ 1343, 2. They worked as telemarketers for a fraudulent telemarketing operation in Las Vegas, Nevada, called "Say No Now, Inc." ("SNN"). Baggett and Grzesczuk appeal their convictions and sentences. Burney and Hayes appeal their sentences.
 
 
 2
 We have jurisdiction over the timely appeals under 28 U.S.C. § 1291. We remand for resentencing so that the district court may explain which statute it relied upon in ordering restitution and conform the restitution orders to the requirements of that statute.[1]
 
 I. BACKGROUND
 
 3
 From July of 1994 through November of 1995, appellants induced victims to send money to SNN by telling them that in order to receive a valuable award they had won, they had to make a charitable donation to SNN to help keep children away from drugs and alcohol. Almost none of the $1.2 million that SNN collected went to charitable causes. In addition, the victims were given prizes worth only about 15% of the money they sent to SNN.
 
 
 4
 After their convictions for aiding and abetting wire fraud, appellants received prison sentences varying from 27 to 37 months. Appellants were also ordered to pay fines of $20,000 to $25,000 each and restitution ranging from $16,010 to $68,934.
 
 II. ANALYSIS OF THE RESTITUTION ORDERS
 A. Standard of Review
 
 5
 The legality of the restitution orders is reviewed de novo. United States v. Rice, 38 F.3d 1536, 1540 (9th Cir.1994).
 
 B. The Restitution Statutes
 
 6
 The record does not reveal which restitution statute the district court relied upon when making the restitution orders. The sparely-worded orders give little guidance. They simply include a list of monies owed to each victim, and state that each appellant shall pay the restitution "immediately." Neither does the sentencing transcript reveal which restitution statute was applied. The parties themselves are unclear on the question.[2]
 
 
 7
 This is a question that must be answered before appellants' claims can be considered on their merits. Cf. United States v. Stuver, 845 F.2d 73, 75 (4th Cir.1988) (remand required where district court did not specify restitution statute relied upon and order was improper under either statute). Two restitution statutes potentially apply here, and their requirements differ substantially. The Victim Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663-3664 (1995), is the general restitution statute. It authorizes the district courts to order restitution to the victims of any crime under Title 18. 18 U.S.C. § 3663(a)(1). Victims of an offense involving a scheme or conspiracy are eligible for compensation provided that they are directly harmed by the defendant's criminal conduct in the course of the scheme or conspiracy. 18 U.S.C. § 3663(a)(2). With property offenses, the restitution order may require repayment of the full value of the property taken from each victim, 18 U.S.C. § 3663(b)(1), although the court may consider the defendant's financial circumstances before setting the amount of restitution. 18 U.S.C. § 3664(a). In addition, the court may require payment of restitution in installments. 18 U.S.C. § 3663(f).
 
 
 8
 The Senior Citizens Against Marketing Scams Act of 1994, 18 U.S.C. §§ 2325-2327 (1994) ("SCAMS Act"), is a more fact-specific enactment. Individuals convicted of certain offenses as a result of telemarketing activities are subject to enhanced penalties, and must pay full restitution to their victims. "Victims" are defined as any "individual harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2327(f). The issuance of a restitution order is mandatory, regardless of the defendant's financial circumstances. 18 U.S.C. § 2327(b)(4)(A), (B)(i). However, the court may consider the defendant's economic circumstances when "determining the manner in which and the schedule according to which the restitution is to be paid." 18 U.S.C. § 2327(b)(4)(C)(i). Only a defendant whom the court finds to be destitute and unable to pay any restitution in the future is eligible for a nominal restitution order. 18 U.S.C. § 2327(b)(4)(D).
 
 
 9
 The statutory landscape is complicated by the Mandatory Victims Restitution Act of 1996 ("MVRA"), Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-321, 110 Stat. 1214. The MVRA substantially amended both the VWPA and the SCAMS Act. In the following discussion, we consider whether the original or the MVRA-amended versions of the statutes potentially apply to appellants, and we briefly attempt to give guidance to the district court in revising the restitution orders so that they comply with the applicable statute.
 
 1) The Victim Witness Protection Act
 
 10
 The MVRA expressly provides that its amendments to the VWPA apply here. The MVRA states that it "shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of this Act [April 24, 1996]." See 18 U.S.C. § 2248 (statutory notes). Appellants were convicted on May 21, 1996, for criminal activity that took place from July of 1994 through November of 1995. We must therefore determine whether applying the amended version of the VWPA would violate the Ex Post Facto Clause of the United States Constitution.
 
 
 11
 To fall within the ex post facto prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime.
 
 
 12
 Lynce v. Mathis, --- U.S. ----, ----, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997).
 
 
 13
 Since appellants' criminal activity occurred before the MVRA's effective date, the MVRA has a retrospective effect. See United States v. DeSalvo, 41 F.3d 505, 512 (9th Cir.1994) (amendments to VWPA are retrospective when applied to defendant whose criminal activity occurred before amendments enacted).
 
 
 14
 The MVRA also caused a substantive change in the VWPA to appellants' detriment. Most significantly, the amended version of the VWPA requires the court to impose "full" restitution without considering the defendant's economic circumstances. 18 U.S.C. § 3664(f)(1)(A) (1996). After ordering full restitution, the court must set a payment schedule. 18 U.S.C. § 3664(f)(2). If the defendant proves indigency, the court can order nominal periodic payments. 18 U.S.C. § 3664(f)(3)(B). But under the old version of the VWPA, the procedure is reversed: the court must first consider the defendant's financial circumstances before setting the amount of restitution to be paid. 18 U.S.C. § 3664(a) (1995).
 
 
 15
 At the time appellants were sentenced, the amended VWPA thus had the potential to increase the amount of restitution they would have to pay, from an amount set by the court by taking into account appellants' financial circumstances, to full restitution. Accordingly, if the court determines that the VWPA should apply to this case, it must use the old version to avoid running afoul of the Ex Post Facto Clause. See United States v. Thompson, 113 F.3d 13, 15 n. 1 (2d Cir.1997) (dictum).
 
 
 16
 In setting the amount of restitution, the district court must therefore consider the amount of loss sustained by the victims; appellants' financial resources, financial needs and earning ability; and any other factors the court deems appropriate. 18 U.S.C. § 3664(a) (1995). While the court need not make express findings of fact about appellants' financial condition, "the record must reflect that the district court had at its disposal information relating to [appellants'] financial condition." United States v. Sablan, 92 F.3d 865, 871 (9th Cir.1996). In other words, the record must indicate that "the district court considered [appellants'] future ability to pay." United States v. English, 92 F.3d 909, 917 (9th Cir.1996) (internal quotation omitted). Of particular importance in this case, the restitution orders "must be based on some evidence that [appellants] may be able to pay the amount fixed when required to do so--the possibility of an unforeseeable windfall is not enough." United States v. Ramilo, 986 F.2d 333, 335 (9th Cir.1993) (emphasis added). The court may choose to order appellants to pay the restitution in installments. 18 U.S.C. § 3663(f)(1995).
 
 
 17
 2) The Senior Citizens Against Marketing Scams Act of 1994
 
 
 18
 The more fact-specific SCAMS Act also appears to apply to this telemarketing fraud case. However, we leave to the district court on remand the factual determination whether this case meets the SCAMS Act's requirements. See 18 U.S.C. § 2325(1)(A).[3] The MVRA's amendments to the SCAMS Act apply to appellants unless barred by the Ex Post Facto Clause.
 
 
 19
 Once again, the MVRA has a retrospective effect since appellants' criminal activity occurred before the MVRA took effect in 1996. However, the MVRA did not increase the punishment available under the SCAMS Act.[4] It merely changed the procedures under which the district court orders restitution by conforming them with the amended VWPA's procedures.[5] See 18 U.S.C. § 2327(b)(2) (1996), incorporating 18 U.S.C. § 3664 (1996); see California Department of Corrections v. Morales, 514 U.S. 499, 506-07, 115 S.Ct. 1597, 1602, 131 L.Ed.2d 588 (1995) (no ex post facto violation where amendment to parole statute merely altered method of setting parole date, not substantive standards used to determine when prisoner should be paroled).
 
 
 20
 If the district court finds that the SCAMS Act applies to appellants, it must amend the restitution orders to comply with the 1996 version of the SCAMS Act. Most importantly, 18 U.S.C. 3664(f)(2), incorporated into the SCAMS Act by 18 U.S.C. § 2327(b)(2), requires the district court to set a payment schedule according to the defendant's financial condition.
 
 III. CONCLUSION
 
 21
 We cannot consider the substance of appellants' claims concerning the restitution orders until we know which restitution statute the district court applied. We therefore VACATE and REMAND as to the restitution orders so that the district court may: 1) clarify which restitution statute applies to appellants; and 2) amend the orders so that they conform with the applicable statute. As to all the remaining issues raised by appellants and discussed in an unpublished memorandum disposition, we AFFIRM.
 
 
 
 *
 Hon. B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 We affirm the district court on the remaining issues, which are discussed in an unpublished memorandum disposition filed concurrently with this opinion
 
 
 [2]
 The government asked the district court to order restitution under the SCAMS ACT, 18 U.S.C. §§ 2325-2327, but initially argued to this court that restitution should be affirmed under the Victim Witness Protection Act, 18 U.S.C. §§ 3663-3664. It switched positions in its supplemental brief, arguing that the order should be affirmed under the SCAMS Act. Appellants have consistently requested reversal of the restitution orders under the VWPA, failing to acknowledge the relevance of the SCAMS Act
 
 
 [3]
 We note that there is no ex post facto bar to applying the SCAMS Act here. The indictment alleged that the fraudulent scheme continued to November 22, 1995, long after the SCAMS Act's effective date of September 3, 1994. See United States v. DeSalvo, 41 F.3d at 512-13
 
 
 [4]
 At first glance, it might appear that the MVRA indirectly increased the potential punishment by repealing 18 U.S.C. § 2327(b)(4)(D). See Pub.L. No. 104-321, Title II, § 205(e)(2)(C), 110 Stat. 1232. That old SCAMS Act provision allowed the district court to enter a nominal restitution order if it found on the record that the defendant was currently indigent and would not be able to pay any restitution in the foreseeable future. At the same time that the MVRA repealed that provision, however, it also incorporated 18 U.S.C. § 3664, an amended provision of the VWPA, into the SCAMS Act. See 18 U.S.C. § 2327(b)(2) (1996). Under 18 U.S.C. § 3664(f)(3)(B) (1996), the district court retains the discretion to order nominal payments if it finds that the defendant cannot pay restitution currently or in the future
 
 
 [5]
 For instance, the MVRA eliminated the requirement in the old SCAMS Act, 18 U.S.C. § 2327(c)(1) (1994), that the U.S. Attorney consult with each victim and file an affidavit listing the victims' losses. Instead, the probation officer is to give the court a report including "to the extent practicable, a complete accounting of the losses to each victim." 18 U.S.C. § 3664(a) (1996), incorporated by 18 U.S.C. § 2327(b)(2) (1996)