[PUBLISH]

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

No. 97-4461

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/04/98
THOMAS K. KAHN
CLERK

D.C. Docket No. 96-6107-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN CALMAN SIEGEL,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Florida

(September 4, 1998)

Before EDMONDSON and BARKETT, Circuit Judges, and ALARCÓN*, Senior Circuit Judge.

ALARCÓN, Senior Circuit Judge:

---

* Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Steven Siegel ("Siegel") was indicted on charges of conspiracy to commit mail fraud, wire fraud, bank fraud, and to launder monetary instruments, all in violation of 18 U.S.C. § 371; and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A). Siegel pleaded guilty to these charges on July 19, 1996, and, as part of his sentence, was ordered to pay restitution in an amount totaling $1,207,000. Siegel now appeals from the order of restitution, arguing that the district court erred by ordering restitution in an amount which the record showed he was unlikely to be able to pay.[1] We agree, and hold that the Victim and Witness Protection Act of 1982 (the "VWPA"), Pub.L. No. 97-291, 96 Stat. 1248, required the district court to consider Siegel's ability to pay when setting the amount of restitution to be ordered. Noting the disparity between the record evidence on Siegel's financial resources and the amount of restitution ordered by the district court, we vacate the order of restitution and remand for a reconsideration of the amount of restitution in light of Siegel's ability to pay.

I

The provisions for restitution set out in the VWPA were substantially amended by the Mandatory Victims Restitution Act of 1996 (the "MVRA"), Pub.L. No. 104-132, 110 Stat. 1214, 1229-1236. The MVRA became effective April 24, 1996. Under the MVRA, the district court must order the payment of restitution in the full amount of the victim's loss without considering

---

1       Siegel also argues on appeal that the district court erred by ordering restitution in the amount of $1,207,000 when the record failed to establish the amount of loss actually suffered. We do not find Siegel's arguments persuasive on this issue, and, having determined that the district court did not err, we dispose of the issue without additional comment. See Eleventh Circuit Rule 36-1.

-2-

the defendant's ability to pay.  See 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1998).[2]  Prior to

enactment of the MVRA, the district court was required to consider, among other factors, the

defendant's ability to pay in fixing the amount of restitution to be made by a defendant.  See 18

U.S.C.A. § 3664(a) (West 1985).[3]

Siegel contends that section 3664(f)(1)(A) should not be applied in reviewing the validity

of the court's restitution order because to do so would violate the Ex Post Facto Clause of the

United States Constitution.  See U.S. Const. art. I, § 9, cl. 3.  In setting forth the effective date of

the MVRA, Congress stated that the amendments to the VWPA "shall, to the extent

constitutionally permissible, be effective for sentencing proceedings in cases in which the

defendant is convicted on or after the date of enactment of this Act [Apr. 24, 1996]."  Pub.L. No.

104-132, § 211.  The crimes alleged in the indictment occurred between February 1, 1988 and

May 1, 1990.  Siegel entered a guilty plea to two counts of the indictment on July 19, 1996.  He

was sentenced on March 7, 1997.  Thus, the plea and sentencing proceedings occurred after the

effective date of the statute eliminating the requirement that the court consider the financial needs

and earning ability of the defendant in fashioning a restitution order.  We must decide whether

---

2       Section 3664(f)(1)(A) states in pertinent part:  "[I]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1998).

3       Former section 3664(a) stated in pertinent part:  "The court, in determining . . . the amount of . . . restitution, shall consider the amount of the loss sustained by any victim . . . the financial resources of the defendant, the financial needs and earning ability of the defendant . . . and such other factors as the court deems appropriate."  18 U.S.C.A. § 3664(a) (West 1985).

application of section 3664(f)(1)(A) to a crime committed before the effective date of the MVRA is constitutionally permissible.

The United States Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed" by Congress. U.S. Const. art. I, § 9, cl. 3. A law violates the Ex Post Facto Clause if it "`appli[es] to events occurring before its enactment . . . [and] disadvantage[s] the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)). The criminal conduct to which Siegel pleaded guilty occurred prior to the effective date of the MVRA. If the MVRA has increased the quantum of the punishment that may be imposed upon a person convicted of an offense defined in section 3663A(c)(1), it cannot be applied to Siegel.[4] In resolving this question, we must first consider whether a restitution order is punishment under the MVRA.

---

4      Section 3663A(c)(1) states in pertinent part:
       This section shall apply in all sentencing proceedings for
       convictions of, or plea agreements relating to charges for,
       any offense --
              (A) that is --
                     (i) a crime of violence, as defined in section 16;
                     (ii) an offense against property under this title,
                     including any offense committed by fraud or deceit;
                     or
                     (iii) an offense described in section 1365 (relating to
                     tampering with consumer products); and
              (B) in which an identifiable victim or victims has suffered
              a physical injury or pecuniary loss.

Section 3663A(a)(1) of Title 18 expressly describes restitution as a penalty under § 3664(f)(1)(A).  See 18 U.S.C. § 3663A(a)(1) (West Supp. 1998) ("the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution").  Although not in the context of an ex post facto determination, this court has noted that restitution is a "criminal penalty meant to have strong deterrent and rehabilitative effect."  United States v. Twitty, 107 F.3d 1482, 1493 n.12 (11th Cir. 1997) (construing purpose of restitution under the VWPA) (quoting United States v. Hairston, 888 F.2d 1349, 1355 (11th Cir. 1989)).  Additionally, in United States v. Dubose, the Ninth Circuit decided in the context of an Eighth Amendment challenge that restitution under the MVRA is punishment because it has "not only remedial, but also deterrent, rehabilitative, and retributive purposes."  Dubose, No. 96-30369,  (9th Cir. June 26, 1998) (citing Austin v. United States, 509 U.S. 602, 610 (1993)).  See also United States v. Rico Indus., Inc., 854 F.2d 710, 714 (5th Cir. 1988) (holding that restitution is a criminal penalty that negates the imposition of prejudgment interest); United States v. Sleight, 808 F.2d 1012, 1020 (3rd Cir. 1987) (same).  Thus, we conclude that restitution under the MVRA is a penalty.

We must next consider whether the imposition of restitution under the MVRA is an increased penalty as prohibited by the Ex Post Facto Clause.  In Lindsey v. Washington, 301 U.S. 397, 57 S. Ct. 797 (1937), the Supreme Court explained the reach of the Ex Post Facto Clause as follows:

[T]he ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. . . . [A]n increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.

Id. at 799 (citations omitted).

Prior to the enactment of the MVRA, the district courts had the discretion to order "that the defendant make restitution to any victim of the offense." 18 U.S.C.A. § 3663 (West 1985).[5] See United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997) (holding that the Ex Post Facto Clause prohibited retroactive application of the MVRA because, "[b]efore the MVRA became effective, the Victim and Witness Protection Act authorized but did not compel district courts to order restitution"). In exercising this discretion, the court was required to consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate," before fixing the amount of the restitution, if any, that the defendant was required to pay. 18 U.S.C.A. § 3664(a) (West 1985).

Under the MVRA, an award of restitution is no longer discretionary. See 18 U.S.C.A. § 3663A(a)(1) (West Supp. 1998).[6] The district court must order restitution in the full amount of each victim's losses without consideration of the defendant's economic circumstances. See 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1998). The effect of the MVRA can be detrimental to a defendant. Previously, after considering the defendant's financial condition, the court had the

---

5    Section 3663(a)(1) stated in pertinent part: "The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense." 18 U.S.C.A. § 3663(a)(1) (West 1985).

6    Section 3663A(a)(1) states in pertinent part: "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense. . . ." 18 U.S.C.A. § 3663A(a)(1) (West Supp. 1998).

discretion to order restitution in an amount less than the loss sustained by the victim.  Under the

MVRA, however, the court must order restitution to each victim in the full amount.

In United States v. Baggett, 125 F.3d 1319 (9th Cir. 1997), cert. denied, 118 S. Ct. 1089

(1998), the court held that the MVRA cannot be applied to those persons whose criminal activity

occurred prior to its effective date.  Id. at 1322.  The Ninth Circuit reasoned as follows:

> The MVRA also caused a substantive change in the VWPA to
> appellant's detriment.  Most significantly, the amended version of the
> VWPA requires the court to impose "full" restitution without considering
> the defendant's economic circumstances.  18 U.S.C. § 3664(f)(1)(A)
> (1996).  After ordering full restitution, the court must set a payment
> schedule.  18 U.S.C. § 3664(f)(2).  If the defendant proves indigency, the
> court can order nominal periodic payments.  18 U.S.C. § 3664(f)(3)(B).
> But under the old version of the VWPA, the procedure is reversed:  the
> court must first consider the defendant's financial circumstances before
> setting the amount of restitution to be paid.  18 U.S.C. § 3664(a) (1995).
> At the time appellants were sentenced, the amended VWPA thus
> had the potential to increase the amount of restitution they would have to
> pay, from an amount set by the court by taking into account appellants'
> financial circumstances, to full restitution.  Accordingly, if the court
> determines that the VWPA should apply to this case, it must use the old
> version to avoid running afoul of the Ex Post Facto Clause.  See United
> States v. Thompson, 113 F.3d 13, 15 n.1 (2d Cir. 1997) (dictum).

Baggett, 125 F.3d at 1322.  Accord, United States v. Bapack, 129 F.3d 1320, 1327 n.13 (D.C.

Cir. 1997); Williams, 128 F.3d at 1241; United States v. Thompson, 113 F.3d 13, 15 n.1 (2nd

Cir. 1997); United States v. Sclafani, 996 F. Supp. 400, 403-04 (D.N.J. 1998).  But see, United

States v. Newman, 144 F.3d 531, 538 (7th Cir. 1998) (holding that retroactive application of

MVRA does not violate the Ex Post Facto Clause because restitution is not a criminal

punishment).

We are persuaded by the analysis adopted in the majority of the circuits on this issue.

We believe that the Seventh Circuit's view of restitution in Newman, 144 F.3d at 538, is

inconsistent with this court's position in Twitty, 107 F.3d at 1493 n.12, that restitution is a criminal penalty carrying with it characteristics of criminal punishment. Accordingly, we hold that the MVRA cannot be applied to a person whose criminal conduct occurred prior to April 24, 1996. Therefore, we must determine the validity of the restitution order under the law applicable prior to the effective date of the MVRA.

## II

Siegel asserts that the district court abused its discretion in ordering restitution to the victims in the amount of $1,207,000.00 where the undisputed facts set forth in the presentence report ("PSR") demonstrate that he is unable to pay the amount of restitution ordered by the court presently or in the future. The district court adopted the probation officer's recitation of the facts in fashioning the restitution order. The validity of a restitution order is reviewed for abuse of discretion. See United States v. Blaik, 117 F.3d 1288, 1291 (11th Cir. 1997); United States v. Remillong, 55 F.3d 572, 574 (11th Cir. 1995) (per curiam).

The Government contends that Siegel did not object to the amount of the restitution order. It maintains that Siegel's failure to object to the order of restitution compels this court to review it for plain error. The Government offers several arguments in support of its contention that Siegel failed to object to the amount of the restitution order. During oral argument, the Government suggested for the first time that, as a matter of fairness, Siegel's failure to file a written objection to the probation officer's report on the ability-to-pay issue, as required by the local rules of the district court,[7] precluded Siegel from raising the issue at the sentencing hearing. The Government

---

7    General Rule 88.8 of the Local Rules of the United States District Court for the Southern District of Florida ("General Rule 88.8") states in pertinent part:  "Within fourteen (14) days of

-8-

asserts that Siegel's failure to challenge the PSR on this basis hampered its ability to present evidence to demonstrate that Siegel has the ability to pay restitution in the full amount of the victims' losses. Second, the Government argues in its responsive brief to this court that Siegel failed to meet the statutorily imposed burden of persuasion on the question whether he had the ability to pay restitution in the full amount of the loss suffered by the victims. Third, the Government asserts that defense counsel's objection following the imposition of sentence by the district court was in relation to the restitution order's impact on Siegel's release date, not on his financial inability to pay restitution in the amount of $1,207,000. Lastly, the Government maintains that even if the objection was sufficient to preserve the issue for appeal, it was withdrawn when defense counsel said "All right," and then failed to re-assert the objection at the conclusion of the sentencing procedure. We disagree with the Government's arguments and address each in turn.

The Government's contention that Siegel failed to comply with the local rules is not apposite. In the PSR, the probation officer informed the court that "[g]iven the defendant's current financial condition, it does not appear he has the ability to pay a fine." The Government did not contest this finding. While the probation officer also stated that "the court may wish to order restitution in this case," the probation officer did not find that Siegel had the present or future ability to satisfy an order of restitution for the total amount of the loss suffered by the victims. Because the probation officer made no finding that Siegel had the financial ability to pay

_____

receipt of the report, counsel for the defendant and the government must communicate any objections, in writing, to each other and to the probation officer." S.D. Fla. L.R., General Rule 88.8.

restitution in any amount, the PSR did not contain an adverse finding regarding Siegel's financial ability to pay restitution. Siegel had no reason to object to the PSR on the ability-to-pay issue because he believed the findings accurately reflected his financial circumstances. Furthermore, at the time the probation office filed the PSR with the court, there were no grounds to object to a disparity between Siegel's ability to pay and the amount of restitution ordered since no restitution order had been imposed.

The Government's argument that Siegel failed to meet his burden of persuasion that he did not have the financial resources or earning capacity to pay $1,207,000 is devoid of merit. The Government correctly observes that a defendant has the burden of persuading the district court by a preponderance of the evidence that he does not have the ability to pay restitution for the full amount of the victims' losses. See 18 U.S.C.A. § 3664(d) (West 1985).[8] In United States v. Fuentes, 107 F.3d 1515 (11th Cir. 1997), this court stated: "[w]here the underlying criminal conduct resulted in a substantial financial gain for the defendant, a strong inference may arise that the defendant has access to the fruits of her crime, or at least proceeds therefrom. She must present convincing evidence to rebut this natural inference." Id. at 1532. In Fuentes, this court vacated an order that the defendant pay the total amount of the loss to the victims because the court indicated that it believed that the defendant did not have the ability to pay the full amount. Id. at 1530-31. This court held that a defendant carries his or her burden of persuasion when the

_____

8  Section 3664(d) stated in pertinent part: "Any dispute as to the proper amount or type of restitution shall be resolved by a preponderance of the evidence. . . . The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant." 18 U.S.C.A. § 3664(d) (West 1985).

court finds that the defendant more likely than not will be unable to pay full restitution. Id. at 1531.

Here, the PSR showed that Siegel's liabilities were greater than his assets, his current income was minimal, and his future earning capacity was limited by the fact that he suffers from a congenital spinal defect. This undisputed evidence was sufficient to demonstrate that Siegel no longer had access to the fruits of his crime at the time of sentencing, and satisfied his burden of persuading the court that he did not have the financial ability or future earning capacity to pay the full amount of the loss to the victims. The Government failed to produce any evidence to demonstrate that the facts set forth in the PSR were not credible.

Siegel maintains that at the sentencing hearing, he objected to both "the amount of restitution ordered as well as Mr. Siegel's inability to pay that restitution." Appellant's Brief at 4. The Government argues that the objection made by defense counsel at the sentencing hearing was not in regards to the restitution order itself, but rather to its effect on Siegel's release date.

The court pronounced sentence on March 7, 1997. After hearing argument from counsel, the court announced for the first time that it would adopt "the factual findings and guidelines application in the presentence report." With respect to the loss suffered by the victims, the court stated: "The Court finds that the Defendant is not able to pay a fine and also make restitution in this case; therefore no fine will be imposed in this case. The Court will order the Defendant, however, to make restitution to the victims of these crimes." In ordering Siegel to pay $1,207,000, the district court made no finding concerning Siegel's financial ability to pay restitution in any amount.

Following the court's pronouncement of its sentencing decision, Siegel's counsel stated: "Your honor, I'm concerned about the order of restitution. <u>I</u> <u>know</u> <u>my</u> <u>client</u> <u>has</u> <u>nowhere</u> <u>near</u> <u>those</u> <u>kind</u> <u>of</u> <u>monies</u> <u>to</u> <u>pay</u> <u>back</u>, and I'm concerned that that would have some sort of an adverse effect on his release date. <u>I</u> <u>know</u> <u>he</u> <u>doesn't</u> <u>have</u> <u>a</u> <u>million</u> <u>dollars</u>." (emphasis added) In response to this contention, the court commented: "Well, he can pay what he can pay, just like the rest of us in this life." The court did not find that Siegel had the ability to pay the full amount of the loss to the victims. In <u>Fuentes</u>, we held that a court abuses its discretion when it orders full restitution in the face of an implied finding that "the defendant more likely than not will be unable to pay full restitution." 107 F.3d at 1531.

Following this colloquy, the district court inquired of counsel whether they had any objections to the court's findings of facts and conclusions of law, or to the manner in which the sentence was pronounced. Defense counsel replied: "Your honor, I would like to reserve my objections."

The court responded: "All right. What objections have you, sir?" Siegel's counsel responded: "The objections to the role in the offense. The dollar amount, also, your Honor, I would like to reserve my objections to the dollar amount." The court then stated: "The Defendant's renewed objections made at the conclusion of the sentencing hearing will be overruled."

In <u>United States v. Fox</u>, 140 F.3d 1384 (11th Cir. 1998) (per curiam), this court held that an objection to a court's restitution order is not waived if it is not made until after sentence is pronounced. <u>Id.</u> at 1385-86 (citing <u>United States v. Jones</u>, 899 F.2d 1097, 1102 (11th Cir. 1993) (en banc)).

-12-

The objection made by defense counsel at the sentencing hearing adequately raised the issue of a disparity between the amount of restitution ordered and the undisputed facts set forth in the PSR suggesting that Siegel may not have the financial ability or earning capacity to pay restitution in the amount of $1,207,000. In United States v. Weir, 51 F.3d 1031 (11th Cir. 1995), this court held if the record shows that the district court clearly understood the objection to the proposed sentence and rejected it, the issue is preserved for appeal. Id. at 1033. Here, the court's response to the objection demonstrates that it was aware that defense counsel was contending that Siegel did not have the ability to pay the full amount of the loss suffered by the victims. We conclude that Siegel properly objected to the amount of the restitution order on the ground that the court failed to consider the evidence showing Siegel's inability to pay $1,207,000.

The Government maintains, however, that even if the objection was sufficient to preserve the issue for appeal, it was withdrawn. Without citation to any authority, the Government argues:

> Even assuming, arguendo, that appellant can be construed to have objected to the order of restitution, when he expressed his concern regarding the ability [sic] it might have on his client's release, he withdrew the objection when he stated "All right", in response to Judge Gonzalez' response that appellant "can pay what he can pay."

(Government's Br. at 12) (emphasis added).

A lawyer's professional and courteous submission to a trial court's authority to make a final ruling on a contested issue should not be construed as a withdrawal of an objection. See, e.g., Guam v. Marquez, 963 F.2d 1311, 1314-14 (9th Cir. 1992) ("We do not interpret defense counsel's commendable civility, in the face of an extraordinary ruling, as an abandonment of the objection or a waiver of his client's right to appeal.").

Because we conclude that Siegel made a proper objection before the district court on the issue of the disparity between the amount of restitution ordered and the record evidence on his ability to pay, we review the validity of the restitution order for abuse of discretion.  See Remillong, 55 F.3d at 574.

III

In Remillong, this court held that "we will not uphold the district court's exercise of discretion if the record is devoid of any evidence that the defendant is able to satisfy the restitution order."  Id. (quoting United States v. Patty, 992 F.2d 1045, 1052 (10th Cir. 1993)).  The restitution order in Remillong was vacated and remanded following this court's determination that the district court had "effectively ignored the requirements of the statute [18 U.S.C. § 3664(a)] by failing to consider evidence of Remillong's financial inability to pay the ordered restitution in the record before him."  Id. at 576 (internal quotations omitted).  In Remillong, this court adopted a test formulated by the Seventh Circuit to evaluate a defendant's claim that the district court failed to consider a mandatory sentencing factor under section 3664(a) in fixing the amount of restitution.  See Remillong, 55 F.3d at 576 (quoting United States v. Murphy, 28 F.3d 38, 41 (7th Cir. 1994)).  To succeed on such a claim, the defendant "must show either that (1) it is not improbable that the judge failed to consider the mandatory factor and was influenced thereby, or (2) the judge explicitly repudiated the mandatory factor."  Remillong, 55 F.3d at 576 (internal quotations omitted).

In Fox, 140 F.3d 1384, the district court ordered the defendant to pay restitution to the victim of a bank robbery, notwithstanding the fact that the PSR reflected that the defendant "had

-14-

not finished high school, has only a limited ability to make a living, had spent eleven years in state prison from 1978 to 1989, and had no significant assets and was unable to pay a fine." Id. at 1385. This court reversed the restitution order holding that the district court had failed to comply with the requirements of 18 U.S.C. § 3664(a). Id. at 1386. This court rejected the Government's argument that the defendant had failed to meet his burden of demonstrating his financial resources by a preponderance of the evidence. Id. The court held that the "PSR makes clear that Franklin does not have the ability to pay restitution." Id. This court expressly rejected the government's argument that the fact that some of the proceeds of the robbery were not recovered is an adequate basis to support a finding that a defendant had the financial ability to pay restitution. Id.

Here, the only evidence in the record regarding Siegel's financial ability to pay the restitution was the PSR findings adopted by the district court. The PSR showed, however, that Siegel had no assets and that he had debts in the amount of $7,500. Siegel's income varied between $400 and $1,000 a month. His expenses totaled $250 per month. The PSR also acknowledged that Siegel was born with spina bifida, a congenital defect which Siegel argues limits his future earning capacity. Thus, the record does not support a finding that Siegel likely will be able to pay $1,207,000 in restitution. Additionally, as was the case in Remillong, the PSR concluded that "it does not appear he has the ability to pay a fine." See Remillong, 55 F.3d at 575 ("The PSR, which Judge Sharp adopted at sentencing, states that `it does not appear that [Remillong] has the ability to pay a fine.'"). Furthermore, as in Remillong, no evidence was presented by the Government showing Siegel's ability to pay the amount of restitution ordered within the statutory period. See id. Assuming that Siegel made periodic payments of $750 per

month ($1000 in income -$250 in expenses = $750) he would have to pay that amount for more than 130 years to comply with the court's order. In Fuentes, this court stated: "The sentencing court must fashion a restitution order so that the defendant reasonably will be able to comply with the order within the statutorily mandated time period." Fuentes, 107 F.3d at 1533. Pursuant to former section 3663(f)(2)(A) of Title 18, the end of Siegel's time period in which to satisfy the restitution order "shall not be later than . . . the end of the period of probation," which, in Siegel's case, is three years from the date of his release from incarceration -- five and a half years from the date of sentencing.[9] 18 U.S.C.A. § 3663(f)(2)(B) (West 1985).

Despite the uncontroverted evidence in the record showing Siegel's inability to pay, the court ordered restitution in the full amount of the victims' losses. Given the disparity between the amount of restitution ordered and the evidence in the record demonstrating Siegel's inability to pay that amount, we conclude that "it is not improbable that the judge failed to consider the mandatory factor and was influenced thereby." See Remillong, 55 F.3d at 576. Accordingly, we

_____

9    Section 3663(f) stated in pertinent part:
     (1)  The court may require that such defendant make   restitution under
     this section within a specified period or in   specified installments.

     (2)  The end of such period or the last such installment shall   not be later
     than --
          (A)  the end of the period of probation, if probation is ordered;
          (B)  five years after the end of the term of imprisonment imposed,
          if the court does not order probation; and
          (C)  five years after the date of sentencing in any other case.

     (3)  If not otherwise provided for by the court under this   subsection,
     restitution shall be made immediately.

     18 U.S.C.A. § 3663(f) (West 1985).

-16-

vacate the court's order that Siegel pay restitution in the full amount of the victims' losses. Upon remand, the district court is directed to consider Siegel's financial resources, financial needs, and earning ability in fixing the amount of restitution that he must pay. In deciding the amount of restitution Siegel must pay, the district court should also require Siegel to account for the approximately $200,000 he obtained from the victims of his crimes. If the court finds that any of this money remains in Siegel's control, it should be considered in any award of restitution to the victims.

The sentencing order is VACATED and REMANDED with directions.