UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, Defendant–Appellant.

No. 03–10186.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2004.

Filed July 6, 2004.

Jason F. Carr, Assistant Federal Public Defender, Las Vegas, NV, for the defendant-appellant.

John A. Drennan, Assistant U.S. Attorney, Washington, DC (argued), and Marc I. Osborne, U.S. Department of Justice, Washington, DC (briefed), for the plaintiff-appellee.

Before: FERGUSON, REINHARDT, and PAEZ, Circuit Judges.

FERGUSON, Circuit Judge:

John Doe challenges a restitution order entered against him on the ground that the government did not prove that the restitution amounts imposed reflected the losses of identified victims. He appeals from an amended judgment of conviction entered after a Fed.R.Crim.P. 35(b) resentencing. We hold that we may exercise jurisdiction over this appeal under both 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and remand to the District Court for resentencing.

I.   Factual and Procedural Background

Doe was indicted for securities fraud and other offenses in the District of Nevada, the Western District of Michigan, and the District of Utah. He pled guilty to all three sets of charges, and the cases were consolidated in the District of Nevada.

In the "Michigan case," Doe pled guilty to one count of devising a scheme to defraud and obtain money by false pretenses, in violation of 18 U.S.C. § 1343. In that case, Doe's investment company had purchased restricted stock of a corporation at a discounted price, and had then resold it on the open market despite promising the corporation it would not do so.

In the "Utah case," Doe pled guilty to one count of conspiracy under 18 U.S.C. § 371 and one count of money laundering in violation of 18 U.S.C. § 1957. There, Doe and his associates had filed a statement with the Securities and Exchange Commission to register the distribution of shares of a Utah corporation to two individuals who were falsely represented to be employees of the corporation. One of the two individuals transferred his stock to a company controlled by a relative of Doe's, which then resold the stock on the open market, enriching Doe.

Finally, in the "Nevada case," Doe pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and to money laundering under 18 U.S.C. § 1957. He also consented to the forfeiture of property including a residence in Las Vegas, Nevada, under 18 U.S.C. § 982(a)(1). The charges in that case stemmed from Doe's participation in a conspiracy to sell shares of stock by making false representations to investors, manipulating the market to inflate the value of the stock, and doctoring trading records to facilitate the fraud.

On May 15, 2002, the District Court sentenced Doe to concurrent 30–month prison sentences for all three cases and a three-year term of supervised release. The court also ordered Doe to pay restitution in the following amounts: $316,000 in the Michigan case; $2.5 million in the Nevada case; and $249,085.50 in the Utah case.

Doe appealed, challenging both the sentence and the restitution order. On October 25, 2002, the government filed a motion pursuant to Fed.R.Crim.P. 35 asking the District Court to reduce Doe's sentence due to his substantial cooperation with the government in an unrelated investigation in the Southern District of New York. Doe then voluntarily dismissed his appeal before the Ninth Circuit in order to enable the District Court to consider the government's motion.

On March 7, 2003, the District Court reduced Doe's sentence from thirty months to eight months. The court refused to address Doe's challenge to the restitution order in that proceeding be-

cause it viewed the Rule 35 motion as the sole question before it. On March 24, 2003, the District Court entered an amended judgment. Doe appealed a second time.

## II. Jurisdiction

■ We exercise jurisdiction over this appeal under both 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291. While both parties agree that this Court has jurisdiction under § 3742, the government contends that we lack jurisdiction under § 1291 because an appeal from a Rule 35(b) order may only be considered under § 3742. The government's argument misapprehends the jurisdictional basis for Doe's appeal.

Jurisdiction is appropriate under 28 U.S.C. § 1291 because Doe is challenging a final judgment—the District Court's amended final judgment of March 24, 2003—and not any aspect of the District Court's resentencing pursuant to the Rule 35(b) motion. Section 1291 provides: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States." By contrast, in criminal cases, § 3742 restricts appellate jurisdiction by permitting either the defendant or the government to appeal a final sentence only under four circumstances: (1) the sentence was imposed in violation of law; (2) the sentence was a result of an incorrect application of the sentencing guidelines; (3) the sentence departed from the applicable guideline range; or (4) the sentence was plainly unreasonable, if imposed for an offense where there is no applicable sentencing guideline. 18 U.S.C. § 3742.

The government erroneously contends that Doe's appeal is governed by the Ninth Circuit rule that § 3742 is the exclusive avenue of appeal of an order resolving a Rule 35(b) motion. *See United States v. Arishi*, 54 F.3d 596, 599 (9th Cir.1995). In *Arishi*, a defendant granted a sentencing reduction pursuant to Rule 35(b) contended on appeal that he should have been granted a greater reduction, and that the District Court abused its discretion by failing to provide an evidentiary hearing. *Id.* at 596–97. We held that Arishi's appeal did not satisfy any of the requirements of § 3742, and that we therefore lacked jurisdiction to review it. *Id.* at 597, 599. In so ruling, we concluded that a criminal defendant could not use § 1291 to circumvent § 3742's requirements for appealing a Rule 35 decision. *Id.* at 598–99.

Yet *Arishi*, like cases in other circuits establishing the rule that an appeal from a Rule 35(b) order is cognizable only under § 3742, concerns a challenge to the District Court's resolution of the Rule 35(b) motion itself. *See, e.g., United States v. Moran*, 325 F.3d 790 (6th Cir.2003); *United States v. McDowell*, 117 F.3d 974 (7th Cir.1997); *United States v. McMillan*, 106 F.3d 322 (10th Cir.1997); *United States v. Chavarria–Herrara*, 15 F.3d 1033 (11th Cir.1994). None of these cases, however, involves the present situation where the appellant does not challenge the extent of the District Court's sentence reduction but contests an *unrelated* aspect of the sentence contained in the District Court's amended judgment.[1]

■ Where a district court enters an amended judgment that revises legal

---

1. Moreover, *Arishi* is distinguishable because, unlike the present case, Arishi had completed, unsuccessfully, a direct appeal of his original sentence two years prior to his appeal of the Rule 35(b) order. *See* 54 F.3d at 596 (citing *United States v. Arishi*, 988 F.2d 122 (9th Cir.1993)). Because Doe voluntarily dismissed his direct appeal when the govern-

ment filed its 35(b) motion, his present appeal does not relitigate the validity of a sentence that has already been reviewed. Rather, this is Doe's first appeal of the validity of his underlying sentence, which was made final when the District Court ruled on the government's 35(b) motion.

rights or obligations, the period for filing an appeal begins anew. *United States v. Antonie*, 953 F.2d 496, 497 (9th Cir.1991). *Antonie* applies this rule even where the appeal concerns a different matter from that revised by the district court. In that case, the government sought to appeal a defendant's sentence on the ground that the trial court failed to impose a necessary sentencing enhancement. *Id.* The appeal would have been timely only if the thirty-day period for appeal ran from the entry of the amended judgment. *Id.* We held that the appeal was timely even though it related to an issue that was not altered by the amended judgment. *Id.*

The *Antonie* court relied on *FTC v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 97 L.Ed. 245 (1952), where the Supreme Court held that while the period for review is not tolled every time a judgment is revised "in an immaterial way," that period is tolled "when the lower court changes matters of substance, or resolves a genuine ambiguity" in a prior judgment. *Id.* at 211, 73 S.Ct. 245. "The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Id.* at 212, 73 S.Ct. 245.

Because the District Court "revised legal rights and obligations" in changing Doe's sentence, *Honeywell* and *Antonie* suggest that Doe should be able to appeal the amended judgment anew. Jurisdiction under 28 U.S.C. § 1291, as well as under 18 U.S.C. § 3742, is therefore proper.

III. Restitution Challenge

A. Standard of Review

 The legality of restitution orders is reviewed de novo. *United States v.*

*Baggett,* 125 F.3d 1319, 1321 (9th Cir. 1997). The District Court's underlying factual findings are reviewed for clear error, but its valuation methodology is reviewed de novo. *United States v. Lomow,* 266 F.3d 1013, 1020 (9th Cir.2001).

B. Nevada and Michigan Restitution Orders

Doe contends that the restitution ordered in the Nevada and Michigan cases was unlawful because the government did not establish specific losses to identified victims. Doe does not contest the restitution imposed in the Utah case. The government responds that the District Court did not have jurisdiction to address the issue in a Rule 35(b) proceeding. That response is no response at all. Doe is not challenging the District Court's failure to consider the issue in the Rule 35(b) hearing; he contests the restitution order itself as unlawful. Doe's claims are properly before this Court.

We have held that restitution ordered must be "limited by the amount actually lost by the victims," and that the court "must be able positively to identify each victim to whom restitution is due ...." *United States v. Pomazi,* 851 F.2d 244, 250 (9th Cir.1988), *overruled on other grounds by Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), *superceded on other grounds by* Crime Control Act of 1990, Pub.L. No. 101–647, § 2509. The Mandatory Victims Restitution Act of 1996 specifically makes an order of restitution contingent on the identification of specific victims. 18 U.S.C. § 3663A(c)(1)(B). *See also United States v. Catoggio,* 326 F.3d 323, 328 (2d Cir. 2003).

The government takes no issue with Doe's analysis of the law on this point. In fact, with respect to the Nevada case, the government suggests that we remand to determine the identities of the victims to whom restitution is due—effectively conceding that it failed to meet its burden. Accordingly, we remand for resentencing as to the Nevada case.

■ With respect to the Michigan case, the government contends that defense counsel waived any challenge to the restitution order at the initial sentencing hearing by affirmatively stating that a $316,000 restitution amount would be proper. The record, however, does not support the government's waiver argument. Waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). While the standard for a waiver of fundamental rights may be more exacting than for other rights, *see, e.g., New York v. Hill,* 528 U.S. 110, 114–15, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), a waiver of a statutory right must still be "knowing and voluntary." *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993). Here, there is no evidence that defense counsel knowingly waived Doe's right to contest the $316,000 restitution order.

The Michigan plea agreement itself acknowledged that the government could not prove specific losses to individual victims because "identifying numerous investors and reconstructing their losses and gains in a volatile market is beyond its factfinding ability." The Presentence Investigation Report likewise acknowledged the "impossibility" of identifying specific investors victimized by the Michigan fraud. Despite those clear acknowledgments of the unavailability of restitution, defense

counsel, at sentencing, appeared to countenance the court's suggestion of a $316,000 restitution order. Counsel stated: "Yes, sir, and I don't contest that at all. I believe that would be an appropriate amount."

Although on its face a concession, the record suggests that defense counsel might have confused the Michigan plea agreement with the Utah plea agreement, which did not disavow the possibility of restitution. Earlier during the sentencing hearing, counsel stated, "the presentence report as to the Utah case ... says that there are no identifiable victims, therefore, restitution should not be ordered." However, the presentence report actually made that statement only with respect to the Michigan case. The record suggests that counsel confused the terms of the two plea agreements.

The record also suggests that counsel might have intended, at most, to consent to the imposition of a *fine* of $316,000 in the Michigan case, rather than restitution. During the hearing, defense counsel objected to the imposition of a fine, but then stated, "If the Court chooses to impose a fine in lieu of restitution ... the highest figure that should be available is $316,000, that being the agreed-upon loss amount[from] the Michigan case."[2] After further discussion of the other plea agreements, the court stated that "if I were to find restitution in the Michigan case of $316,000 [it] would be based primarily" on the plea agreement stating that Doe admitted that gain. It was at that point that defense counsel allegedly waived any objection to the restitution order when he stated: "Yes, sir, and I don't contest that at all. I believe that would be an appropriate amount." Read in context, howev-

---

2. The Michigan plea agreement actually stated that Doe admitted a $316,000 *gain* from that offense. He did not admit that any victims suffered losses in that amount.

er, defense counsel's statement appears to be, at most, an acceptance of a $316,000 fine in the Michigan case.

We do not find that Doe waived his right to challenge the Michigan restitution order. Because the government did not meet its burden of proving identifiable victims in that case—and, indeed, maintained that it could not—we vacate the Michigan restitution order.

C.   Offset for Value of Forfeited Home

■  Finally, Doe contends that the District Court, in setting restitution, failed to deduct the value of a Las Vegas residence that Doe was forced to forfeit. That residence was purchased with Doe's proceeds from the Nevada conspiracy, and Doe forfeited that property pursuant to the Nevada plea agreement. We reject Doe's contention because Doe is covered by amendments to the Victim and Witness Protection Act enacted by the Mandatory Victims Restitution Act of 1996, which overruled the only authority that Doe cites. *See Baggett,* 125 F.3d at 1322 (applying new rules to ´sentencing proceedings where the defendant's conduct occurred on or after April 24, 1996).

Relying on the older version of the statute, we held in *United States v. Johnston,* 199 F.3d 1015 (9th Cir.1999), that a district court is required to consider other sources of compensation to victims to avoid double recovery, including money forfeited by the defendant. The version of the Victim and Witness Protection Act then applicable provided that a court could not "impose restitution with respect to a loss for which the victim has received or is to receive compensation." 18 U.S.C. § 3663(e)(1) (1995). The new version of the restitution statute, by contrast, provides: "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B).

■  We recently held that this language requires a district court to set the amount of the defendant's restitution obligation "in the first instance" without regard to forfeited funds. *United States v. Bright,* 353 F.3d 1114, 1122 (9th Cir.2004). Where victims covered by a restitution order later recover "compensatory damages" in a civil proceeding for the same loss, the restitution order is accordingly reduced. *Id. Bright* leaves open the possibility that disbursements to victims from forfeited funds could be construed as "compensatory damages" within the meaning of the statute. *Id.* at 1122–23. It makes clear, however, that offsetting a restitution order by the value of forfeited funds is not permitted where victims have not received compensation from those funds. *Id.* at 1123. Here, Doe has not alleged that any proceeds from the forfeiture of his Las Vegas home were distributed to victims. Therefore, the District Court's failure to consider an offset for the Las Vegas residence was not unlawful.

We reverse the restitution orders in the Nevada and Michigan cases, and remand to the District Court for resentencing as to the Nevada case. REVERSED AND REMANDED.