

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-1998

# United States v. Edwards

Precedential or Non-Precedential:

Docket 98-1055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Edwards" (1998). *1998 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1055

UNITED STATES OF AMERICA

v.

ROBERT ALLEN EDWARDS a/k/a FIDEL SALIM
a/k/a JAMES F. WINTER, III a/k/a CHARLES KING
a/k/a DONALD W. COLEMAN,

Robert Allen Edwards,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 97-117-1)

Argued Under Third Circuit LAR 34.1(a)
October 8, 1998

Before: McKEE AND RENDELL, Circuit Judges,
DEBEVOISE, District Judge.*

(Opinion Filed: November 27, 1998)

_____

*Honorable Dickinson Debevoise, United States Senior District Court
Judge for the District of New Jersey, sitting by designation.

Steven A. Feldman (ARGUED)
Of Counsel
Feldman and Feldman
Suite 206
1800 Northern Boulevard
Roslyn, NY 11576
 Attorney for Appellant

Michael R. Stiles, United States
 Attorney
Walter S. Batty, Assistant United
States Attorney, Chief of Appeals
Joseph Dominguez (ARGUED)
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476
 Attorneys for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge:

In this appeal, we are asked to determine whether the Victim and Witness Protection Act ("VWPA") or the Mandatory Victims Restitution Act ("MVRA") applies to the imposition of restitution in sentencing a defendant who committed his offenses prior to the effective date of the statute but is convicted on or after its effective date. The District Court found that although Edwards had no present ability to pay restitution, full restitution should be imposed under the MVRA. Edwards timely appealed to this court. Both sides now agree that the District Court incorrectly applied the MVRA to Edwards, and that the Victim and Witness Protection Act (VWPA) should have been applied.1

_____

1. Appellant did not specifically argue that the VWPA, not the MVRA applied, but did contend that the District Court should have made findings regarding his financial ability to pay before ordering restitution.
This finding is necessary only for cases under the VWPA. 18 U.S.C. SS 3663, 3664.

2

We hold that the application of the MVRA to Edwards constitutes a violation of the ex post facto prohibition, and we accordingly reverse and remand for a determination of whether restitution is appropriate for Edwards under the VWPA.

I. Factual Background

Between December of 1992 and October of 1993, Edwards was involved in various schemes involving counterfeit checks, forged commercial checks, and stolen travelers' checks. PSI P 1. Edwards was sentenced on December 23, 1997, after pleading guilty to one count of conspiracy, one count of bank fraud, seven counts of money laundering, and one count of criminal forfeiture. Potential monetary penalties included a fine range of $12,500 to $5,000,000, restitution of $418,397.15, and a special assessment of $500. PSI P 77, 81. The probation office's review of Edwards's liabilities and assets indicated that he had children to support, did not own property or appear to have any assets of note, and had a total liability of $92,854 of debts owed to credit card companies and banks. PSI PP 61–68.

At sentencing, defense counsel argued that Edwards did not have the ability to pay restitution, while the government contended that restitution was mandatory for his offenses under the MVRA. The district judge found that although the defendant did not have the present ability to pay restitution, the MVRA required restitution and ordered full restitution in the amount of $418,397.15. (A. at 14, 16, 22).2 This court has jurisdiction pursuant to 28 U.S.C.S 1291 and 18 U.S.C. S 3742. As the ex post facto argument was not raised before the District Court, plain error review applies. See United States v. Dozier, 119 F.3d 239, 241 (3d Cir. 1997).

_____

2. At sentencing, the Assistant United States Attorney indicated to the District Court that Edwards' offenses required mandatory restitution. No issue of an ex post facto prohibition was raised by counsel or the court. A. at 22. Recently, the Justice Department has apparently adopted a policy that the MVRA should not be applied to offenses predating its enactment. Gov't Br. at 6.

3

II. The MVRA and the VWPA

In 1996, Congress passed the MVRA, or "Mandatory Victims Restitution Act of 1996," Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, codified in relevant part at 18 U.S.C. SS 3663A, 3664 (1996). The MVRA became effective April 24, 1996, to the extent its application is constitutionally permissible. See 18 U.S.C. S 2248 (statutory notes). The MVRA makes restitution mandatory for particular crimes, including those offenses which involve fraud or deceit. See 18 U.S.C. S 3663A(c)(1)(A)(ii). If the MVRA applies to a defendant, a court must order restitution to each victim in the full amount of that victim's losses, and the court cannot consider the defendant's economic circumstances. See 18 U.S.C. S 3664(f)(1)(A). While the MVRA clearly applies to convictions on or after its effective date, its applicability to offenses committed before that date is at issue here. See 18 U.S.C.S 2248 (statutory notes).

The prior restitution statute, the Victim and Witness Protection Act, or "VWPA," requires the court to consider the economic circumstances of the defendant prior to ordering restitution. In this Circuit, a District Court has to make certain factual findings before ordering restitution under the VWPA: 1) the amount of the loss sustained by the victims; 2) the defendant's ability to pay that loss; and 3) how the amount of restitution imposed relates to any loss caused by the conduct underlying the offense(s) at issue. See Government of Virgin Islands v. Davis , 43 F.3d 41, 47 (3d Cir. 1994). Under the VWPA, an indigent defendant can be made to pay restitution, but the court must tailor its findings to a defendant's potential assets or earning capacity. Id.

Neither side contests the fact that Edwards's crimes fall under S 3663A if the MVRA applies to him. If the VWPA applies to Edwards, however, the District Court erred by failing to make the required factual findings prior to imposing restitution. In order to determine which statute applies, we must determine the constitutionality of applying the MVRA to a defendant whose criminal conduct occurred prior to the effective date of the statute.

4

III. Ex Post Facto Analysis

To fall within the ex post facto prohibition, a law must be 1) retrospective, that is, it must apply to events occurring before its enactment; and 2) it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime. See Lynce v. Mathis, ___ U.S. ___, 117 S. Ct. 891, 896 (1997). The MVRA would be retrospective as applied to Edwards, and it disadvantages him by holding him accountable for the full amount of restitution, when under the VWPA, he would, in all likelihood, not be held accountable for the full amount. The question then is whether the MVRA altered the definition of criminal conduct or increased the punishment for Edwards's crimes. The MVRA did not alter the definition of Edwards's criminal conduct, but it did alter his fiscal responsibility for its consequences, and we must determine whether, in so doing, it increased the punishment for his crimes.

Most of the Courts of Appeals that have considered this question have found that the retrospective application of the MVRA violates the Ex Post Facto Clause because restitution imposed as part of a defendant's sentence is criminal punishment, not a civil sanction, and the shift from discretionary to mandatory restitution increases the punishment meted out to a particular defendant. See United States v. Siegel, 153 F.3d 1256, 1259–1261 (11th Cir. 1998); United States v. Bapack, 129 F.3d 1320, 1327 n.13 (D.C. Cir. 1997); United States v. Williams , 128 F.3d 1239, 1241 (8th Cir. 1997); United States v. Baggett, et al., 125 F.3d 1319, 1322 (9th Cir. 1997); United States v. Thompson, 113 F.3d 13, 14 n.1 (2d Cir. 1997); but see United States v. Newman, 144 F.3d 531 (7th Cir. 1997).

In Williams, the Court of Appeals for the Eighth Circuit viewed the express language of the MVRA as making clear that mandatory restitution was a "penalty," and hence, punishment for the purposes of ex post facto analysis. 128 F.3d at 1241.3 In Siegel, the Court of Appeals for the

_____

3. Section 3663A(a)(1) provides:

> Notwithstanding any other provision of law, when sentencing a
> defendant convicted of an offense [listed under this section] the
> court shall order, in addition to, or in the case of a misdemeanor,
> in addition to or in lieu of, any other penalty authorized by law,
that
> the defendant make restitution to the victim of the offense . . . .

5

Eleventh Circuit focused on the language of S 3663A(a)(1) describing restitution as a "penalty" and its own precedents characterizing restitution as a criminal penalty to conclude that restitution under the MVRA should be considered a criminal penalty, and that the retroactive imposition of the full amount of restitution would violate the Ex Post Facto Clause. See 153 F.3d at 1259-60.4  The Court of Appeals for the Ninth Circuit, in Baggett, focused not so much on the punitive character of restitution, but on the change in procedure for determining a defendant's responsibility for restitution under the MVRA--from the VWPA procedure of analyzing the defendant's financial circumstances before determining the amount of restitution paid, to the MVRA's procedure of ordering full restitution without considering the defendant's economic circumstances--to find that the retroactive application of the MVRA violated the Ex Post Facto Clause. See id. at 1322.

Of the Circuits that have considered this question, only the Court of Appeals for the Seventh Circuit, in United States v. Newman, has determined that the retroactive imposition of restitution under the MVRA does not violate the Ex Post Facto Clause. In Newman, the court conceded that the retroactive application of the MVRA would disadvantage a defendant whose conduct occurred prior to its effective date, but the court stated that since restitution was essentially a civil penalty, and not punishment, the ex post facto prohibition did not apply. See 144 F.3d at 538.5

_____

4. Other Circuits have rejected the retroactive application of the MVRA outright. See Bapack, 129 F.3d at 1327 n.13 (indicating that the retroactive application of the MVRA would raise ex post facto concerns); Thompson, 113 F.3d at 15 n.1 (concurring in the parties' agreement that the retrospective application of the MVRA would be an ex post facto violation).

5. In so finding, the Newman court relied on Kansas v. Hendricks, 117 S. Ct. 2072 (1997) and Hudson v. United States , 118 S. Ct. 488 (1997) to determine whether restitution can be considered punishment. The Seventh Circuit used the analysis set forth in Hudson to determine whether restitution is, in fact, punishment: First, a court must first ask whether the legislature, in establishing the "penalizing mechanism, indicated either expressly or impliedly a preference" for a criminal or civil
penalty. Hudson, 118 S. Ct. at 493. Second, if the legislature indicates

6

In so finding, the Newman court first looked to the historical character of restitution as an equitable device, and opined that restitution serves more as a form of individual remedy than a criminal sanction. Id. Along these lines, the Newman court stated that restitution serves to "ensure that a wrongdoer does not procure any benefit through his conduct at others' expense. . . . The criminal law may impose punishments on behalf of all of society, but the equitable payments of restitution in this context inure only to the specific victims of a defendant's criminal conduct and do not possess a similarly punitive character." Id. at 538 (citations omitted).

In addition to surveying the historical characteristics of restitution as a remedy, the Newman court also noted that it had observed "the non-punitive character of restitution in prior cases." Id. at 538-39 (citing cases). It did note, however, that "our view of restitution is not universally shared." Id. at 539 n.7 (citing cases, including United States v. Sleight, 808 F.2d 1012, 1020 (3d Cir. 1987)). The

_____

an intention to establish a civil penalty, a court must then inquire whether the statutory scheme was so punitive in either purpose or effect so as to transform what was clearly intended as a civil penalty into a criminal penalty. Id. In determining whether a statutory scheme could be so transformed, the Court set forth a multifactor analysis, and emphasized that the factors had to be considered in relation to the face of the statute in question and that only "the clearest proof " will suffice
to override legislative intent. Id.

Our Circuit has used a somewhat different formulation from that set forth in Hudson, namely, that a measure must pass a three-prong test: 1) actual purpose; 2) objective purpose; and 3) effect, to constitute non-punishment. See Artway v. Attorney General, 81 F.3d 1235, 1263 (3d Cir. 1996). If the legislature intends a particular measure to be "punishment," or if retribution was one of its actual purposes, then it must fail constitutional scrutiny; if, however, the" `restriction of the individual comes about as a relevant incident to a regulation,' " the measure must be further analyzed. See id. The continued viability of Artway is arguably in doubt in the wake of recent Supreme Court precedent, but we need not reach the question here in light of the relative clarity of both the statutory language and legislative purpose of the MVRA. See, e.g., Hudson, ___ U.S. ___, 118 S. Ct. at 493 & n. 4; E.B. v. Verniero, 119 F.3d 1077, 1093-94 (3d Cir. 1997).

7

Newman court also looked to the statutory language of the MVRA and took issue with the Williams court's reading of the plain language of the MVRA; instead, the court found the MVRA's statutory scheme to be ambiguous as to the "criminal" or "civil" nature of the penalty assessed under S 3663A. See 144 F.3d at 539. After further review of the historical character of restitution and general characteristics of restitution as a remedy, the Newman court concluded that the ambiguities found in the statute, combined with the traditionally non-punitive character of restitution, warranted a finding that restitution should be considered a civil, rather than a criminal penalty, and that the retroactive imposition of restitution under the MVRA would not violate the Ex Post Facto Clause. See id. at 539–40.

We find that the majority view of the Courts of Appeal is the better view. Both the statutory scheme and the legislative history of the MVRA point toward a determination that restitution should be considered a form of punishment under the statute. Section 3663A and related provisions indicate that restitution is a criminal penalty under the MVRA, as it is imposed as an integral and necessary part of sentencing, supervised release, and probation for the crimes it implicates. 18 U.S.C.SS 3556, 3563(a)(6)(A), 3563(b)(2), 3565, 3663A, 3664. Even if we were mistaken as to the nature of the statutory scheme itself, the legislative history of the MVRA leads to the same conclusion. The legislative history indicates that Congress intended mandatory restitution to be one means by which the criminal justice system could be reformed into a system that is more responsive to the needs of crime victims, as mandatory restitution forces an individual defendant to address the harm his crime has caused to the individual victims of his crime and to society. See S. Rep. 104–179, 1996 U.S.C.C.A.N. 924, 925–26, 930–31; see also  H. Rep. 104–16, reported at 1995 WL 43586 (Feb. 2, 1995), at 5–6, 10; 142 Cong. Rec. H3606 (daily ed., April 18, 1996); 141 Cong. Rec. S19278, S19280 (daily ed., Dec. 22, 1995); Mandatory Victim Restitution: Hearing on S. 173 Before the Comm. on the Judiciary of the United States Senate , 104th Cong. 805 (1995) (statements of Senators Biden, Grassley, and Nickles). In so stating, the legislative history also

evinces a Congressional intent to streamline the administration of restitution within the criminal justice system; to make mandatory restitution under the MVRA a penalty separate from civil remedies available to the victims of crime; and to caution that the administration of mandatory criminal restitution should not take on the procedural complications of civil proceedings--in other words, to ensure that restitution under the MVRA is a form of criminal penalty rather than civil redress. See S. Rep. 104-179, 1996 U.S.C.C.A.N. at 931-34; see also 141 Cong. Rec. S19278, S19281 (daily ed., Dec. 22, 1995). Moreover, the legislative history also indicates that mandatory restitution should be considered a condition of a defendant's supervised release and probation. See S. Rep. 104-179, 1996 U.S.C.C.A.N. at 927, 929; H. Rep. 104-16, 1995 WL 43586 at 5, 12. Both the language and the history of the MVRA convince us that Congress intended the restitution it mandated to be a form of criminal punishment.

Further, this finding is consistent with our precedents stating views regarding restitution for criminal defendants. We previously have indicated that restitution is a form of criminal penalty. See United States v. Sleight, 808 F.2d 1012, 1020 (3d Cir. 1987) ("While one purpose of restitution under the Federal Probation Act is to make the victim whole, restitution . . . is imposed as a part of sentencing and remains inherently a criminal penalty."); United States v. Palma, 760 F.2d 475, 478-79 (3d Cir. 1985) (finding that restitution imposed under the VWPA is a criminal penalty, and distinguishing its imposition under the VWPA from a civil proceeding in which restitution is imposed).6 We have also noted that while criminal restitution resembles a civil remedy and has compensatory as well as punitive aspects, neither these resemblances to civil judgments, nor the compensatory purposes of criminal restitution, detract from its status as a form of criminal penalty when imposed as an integral part of sentencing. See United States v. Woods, 986 F.2d 669, 680-81 (3d Cir.

_____

6. We also note the retributive aspect of a statutory modification mandating payment of restitution regardless of the defendant's means based solely on the nature of the crime.

9

1993); United States v. Kress, 944 F.2d 155, 157–59 (3d Cir. 1991); United States v. Pollak, 844 F.2d 145, 152–53 (3d Cir. 1988); see also United States v. Carrara, 49 F.3d 105, 108 (3d Cir. 1995) (discussing the historical character and purposes of restitution in criminal law); Government of Virgin Islands v. Davis, 43 F.3d 41, 47 (3d Cir. 1994) (describing the compensatory purposes of restitution under the VWPA).

Based on the foregoing, we find that under the MVRA, restitution is punishment, and that the retrospective application of that punishment to Edwards under the facts of this case is a violation of the Ex Post Facto Clause and plain error.7 Accordingly, we will reverse the imposition of mandatory restitution and remand for the District Court to make the appropriate factual findings and determination of restitution under the VWPA for Edwards.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

7. We have little difficulty concluding that the violation of the Ex Post Facto Clause in this case was plain error based on the analysis and holding we set forth in United States v. Dozier, 119 F.3d at 244–45.

10