

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2000

# In Re: Abdur Amin Rashid

Precedential or Non-Precedential:

Docket 98-1719

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: Abdur Amin Rashid" (2000). *2000 Decisions.* Paper 80.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/80

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1719

IN RE: ABDUR AMIN RASHID,

      Debtor

ABDUR AMIN RASHID

v.

VIRGINIA R. POWEL
(D.C. No. 95-cv-04243)

IN RE: ABDUR AMIN RASHID,

      Debtor

ABDUR AMIN RASHID

v.

THE UNITED STATES OF AMERICA; VIRGINIA R. POWEL
(D.C. No. 96-cv-00512)

Abdur Amin Rashid,

      Appellant.

On Appeal from the United States District Court
for the Eastern District for Pennsylvania
(D.C. Civ. Nos. 95-cv-04243 and 96-cv-00512)
District Judge: Honorable Norma L. Shapiro

Submitted Under Third Circuit LAR 34.1(a)
January 4, 2000

Before: BECKER, Chief Judge, ALITO and ALDISERT,
Circuit Judges.

(Filed April 14, 2000)

        Abdur Amin Rashid
        P.O. Box 2000
        White Deer, PA 17887

         APPELLANT PRO SE

        Michael R. Stiles
        United States Attorney
        James G. Sheehan
        Assistant United States Attorney
        Virginia R. Powel
        Assistant United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106

         ATTORNEYS FOR APPELLEE

OPINION OF THE COURT

PER CURIAM.

The question for decision is whether an order to pay restitution to fraud victims in a federal criminal proceeding at a time prior to the October 1998 amendments of the Bankruptcy Code is dischargeable in bankruptcy under 11 U.S.C. S 523. The District Court determined that Abdur Amin Rashid's restitution obligation was statutorily exempt from discharge as a "fine, penalty, or forfeiture payable to and for the benefit" of the United States under S 523(a)(7). We conclude that Appellant's restitution obligation was dischargeable in bankruptcy because it was payable to the benefit of his defrauded victims and not "to and for the benefit" of any governmental unit. We will reverse the judgment of the District Court insofar as it holds otherwise and will affirm its judgment in all other respects.

I.

A federal jury convicted Appellant Abdur Amin Rashid of fifty-four counts, including mail fraud, wire fraud and

2

money laundering, which stemmed from Rashid's operation of a fraudulent commercial loan operation. The District Court sentenced Rashid to 168 months incarceration, assessed $2,700 in fees and fined him $15,000. The Probation Office determined that Rashid's fraud cost his victims $1,696,470 and the sentencing court ordered Rashid to pay criminal restitution in that amount. This Court affirmed the conviction and sentence. United States v. Rashid, 66 F.3d 314 (3d Cir. 1995) (unpublished), cert. denied, 516 U.S. 1121 (1996). By order entered May 18, 1994, Rashid's interest in real estate at 444 East Mt. Pleasant Avenue, Philadelphia, Pennsylvania was forfeited to the United States pursuant to 18 U.S.C. S 982(b)(1). We affirmed the forfeiture.

Confronted with considerable debt after his federal conviction for fraud, Rashid filed for Chapter 7 bankruptcy protection. Among his creditors were the victims of his fraud to whom he owed in excess of $1.6 million pursuant to a criminal restitution order. On July 6, 1994, Rashid filed his voluntary bankruptcy petition and on August 4, 1994, the Bankruptcy Court clerk mailed a notice of bankruptcy to his creditors including the United States. The United States claims to have never received this notice. On August 19, 1994, the United States Attorney for the Eastern District of Pennsylvania filed a judgment lien on his Philadelphia property. Rashid then filed an adversary proceeding against the United States in Bankruptcy Court alleging that (1) his criminal restitution obligation was dischargeable in bankruptcy, (2) the forfeiture order was a fraudulent transfer within the meaning of 11 U.S.C.S 548 and (3) the United States should pay damages for the imposition of a judgment lien in violation of 11 U.S.C. S 362(h). After an Assistant United States Attorney received service of the complaint, she requested that the Prothonotary for the Philadelphia Court of Common Pleas remove the judgment lien, but the Prothonotary failed to remove the lien promptly. The lien remained in effect for eleven months until the United States learned that the Prothonotary had not removed the lien and again requested the Prothonotary remove the lien.

The Bankruptcy Court determined that the issue of whether Rashid's restitution obligation was dischargeable

in bankruptcy was not fairly presented in his adversary complaint and dismissed the claim on summary judgment. On appeal the District Court disagreed but affirmed, concluding that the restitution obligation was statutorily exempt from discharge because the obligation was a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [was] not compensation for actual pecuniary loss, other than a tax penalty." 11 U.S.C. S 523(a)(7).

The District Court affirmed the Bankruptcy Court's order on June 3, 1998. Rashid filed a motion for rehearing on June 17, 1998, which the District Court dismissed as untimely and without merit on July 10, 1998. Rashid filed his notice of appeal to this Court on August 13, 1998.

It bears repetition that this case arose prior to October 1998 and we concern ourselves only with circumstances taking place prior to the amendment of the Bankruptcy Code, an amendment that puts a new gloss on cases involving the dischargeability of restitution obligations arising thereafter. Effective October 7, 1998, S 523 was amended to provide:

> A discharge under [relevant sections of the Code] does not discharge an individual debtor from any debt--
>
> (13) for any payment of an order of restitution is sued under title 18, United States Code.

11 U.S.C. S 523(a)(13) (1998).1

II.

Prior to reaching the merits of this appeal, we must determine if Rashid timely filed his notice of appeal. The time limits for filing a notice of appeal are "mandatory and

_____

1. Although not decided by any court of appeals, it is unlikely that this statute applies retroactively. See In re Gelb , 187 B.R. 87, 90 n.6 (Bankr. E.D.N.Y. 1995) (holding that S 523(a)(13) does not apply retroactively), aff 'd, 1998 WL 221366, *2 n.2 (E.D.N.Y. 1998) (unpublished); In re Kochekian, 175 B.R. 883, 885 n.1 (Bankr. M.D.N.C. 1995) (same). Because neither party to these proceedings suggests S 523(a)(13) should apply to this appeal, we need not reach this issue here.

jurisdictional." Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 495 (3d Cir. 1998). Rule 4(a) of the Federal Rules of Appellate Procedure provides that in a civil case in which the United States is a party a notice of appeal must be filed within sixty days of the entry of judgment in the district court. See also Rule 6(b)(1) (applying Rule 4(a) to bankruptcy appeals). The District Court entered an order affirming the Bankruptcy Court's order on June 3, 1998. Rashid filed his notice of appeal to this Court on August 13, 1998, ten days after it was due.

If a timely motion for rehearing under Bankruptcy Rule 8015 is filed, the time to appeal runs from entry of the order disposing of the motion for rehearing. See Rule 6(b)(2)(A)(i), Federal Rules of Appellate Procedure. Rashid's motion for rehearing was required to be filed within ten days after entry of the judgment of the District Court; the tenth day was Monday, June 15, 1998. The District Court Clerk's Office did not receive his motion until June 17, 1998.

Rashid, however, is a federal inmate entitled to the benefits of the teachings set forth in Houston v. Lack, 487 U.S. 266 (1988), in which the Court recognized that prisoners proceeding pro se confront a situation unique from other litigants because they are unable tofile personally in the courthouse and must depend on prison officials for delivery. The Court crafted a rule that deems a pro se prisoner's notice of appeal filed at the moment it is delivered to prison authorities for mailing to the district court. See id. at 270.

We have previously extended this rule in two ways relevant to this appeal. First, we have held that Houston applies to notices of appeal filed in bankruptcy appeals. See In re Flanagan, 999 F.3d 753, 758 (3d Cir. 1993). We reasoned that "[a] pro se prisoner seeking to appeal a bankruptcy court order faces precisely the same problems as a prisoner who wishes to file a pro se appeal from an order dismissing a habeas petition." Id. Second, we have extended Houston to motions to alter or amend judgment pursuant to Rule 59(e), Federal Rules of Civil Procedure. See Smith v. Evans, 853 F.2d 155, 161 (3d Cir. 1988). By analogy we believe that the teachings of these cases should

5

apply to Rashid's Motion for Rehearing pursuant to Bankruptcy Rule 8015, "the bankruptcy counterpart" to Rule 59(e), Federal Rules of Civil Procedure. See Matter of Grabill Corp., 983 F.2d 773, 775 (7th Cir. 1993).

Rashid seeks the benefit of the prisoner mailbox rule, and he has filed a declaration pursuant to Rule 4(c)(1) that permits a prisoner to demonstrate timely filing by submitting a declaration "in compliance with 28 U.S.C. S 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." Rule 4(c)(1), Federal Rules of Appellate Procedure. Rashid filed a declaration properly sworn under penalty of perjury stating that he handed his motion with first-class postage prepaid to prison officials on Friday, June 12, 1998. See 28 U.S.C. S 1746. The United States has offered no evidence to rebut Rashid's assertion. Accordingly, we find that Rashid timely filed his notice of appeal.

Jurisdiction was proper in the District Court pursuant to 28 U.S.C. S 158(a). Jurisdiction is proper in this court pursuant to 28 U.S.C. S 158(d). Because the District Court sat as an appellate court, reviewing an order of the Bankruptcy Court, our review of the District Court's determinations is plenary. See In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995). Therefore, we review the Bankruptcy Court's legal determinations de novo , its factual findings for clear error and its exercise of discretion for an abuse thereof. In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

III.

Rashid's initial contention is that his restitution obligation is dischargeable in bankruptcy. Before we reach this issue, we must address whether Rashid's adversary complaint in the Bankruptcy Court fairly presented this claim. The court concluded that "no portion of[Rashid's]

6

complaint . . . could fairly be classified as seeking a determination of the dischargeability of a debt" pursuant to Bankruptcy Rule 4007. In re Rashid, Bankr. No. 94-14226F, at 5 (Bankr. E.D. Pa. 1995). The Bankruptcy Court appeared to weigh heavily Rashid's failure to distinguish the dischargeability of his restitution obligation as an independent claim. On appeal, however, the District Court construed the pro se complaint more liberally and determined that Rashid did properly seek dischargeability of his restitution obligation. We agree with the District Court that Rashid's complaint should be liberally read as raising the dischargeability claim. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

The gravamen of Rashid's adversary complaint attacks the propriety of the lien the United States placed on his home in light of the automatic stay. See 11 U.S.C. S 362. The amount of the lien placed on Rashid's home was the sum of his criminal fine, restitution and special assessments. In paragraph 9 of the complaint, Rashid alleged that the Government filed a "false and fraudulent lien" against him "to block the Plaintiff 's efforts to discharge[,] through Bankruptcy, Court Ordered restitution to and for the benefit of the alleged victims as compensation for their actual pecuniary loss." See Compl. P 9. Rashid further alleged that the Government "knew or should have known, that, the restitution amount mentioned [ ] is dischargeable under the Bankruptcy Code . . . . Such restitution amount is not exempted [from discharge] by Title 11, U.S.C., Section 523(a)(7)." Id.

The Bankruptcy Court viewed Rashid's statements concerning his restitution obligation not as an independent claim but as support for the alleged malfeasance of the Government--that the Government not only improperly recorded a lien during the pendency of an automatic stay but also inflated the amount of the lien by including the amount of the restitution order that they "knew or should have known" was dischargeable. We believe this was too strict a reading of Rashid's pro se allegations. Rashid's complaint provided the United States with notice of the facts underlying his claim, because he cited the applicable statute and provided a statement that his restitution

7

obligation should be discharged. That Rashid intertwined this dischargeability claim with another does not preclude recognition of the independent nature of the claim. Indeed, an adversary complaint is precisely the vehicle in which a debtor can seek to declare a particular debt dischargeable. Bankruptcy Rules 4007, 7001(6). We conclude that the District Court properly determined that Rashid's complaint adequately pleaded his claim for discharge. We turn now to the merits of Rashid's claim.

IV.

The sentencing judge accepted the probation officer's calculation of restitution pursuant to United States Sentencing Guidelines S 5E1.1, which incorporates the Victim and Witness Protection Act (VWPA), 18 U.S.C. S 3663. See United States v. Copple, 74 F.3d 479, 482 (3d Cir. 1996). We have previously held that criminal restitution is a debt and is dischargeable in bankruptcy unless statutorily exempted. In re Johnson-Allen , 871 F.2d 421, 426 (3d Cir. 1989). Among those debts not dischargeable in a Chapter 7 bankruptcy are debts created by a "[1] fine, penalty, or forfeiture[2] payable to and for the benefit of a governmental unit [that] [3] [are] not compensation for actual pecuniary loss, other than a tax penalty." 11 U.S.C. S 523(a)(7) (emphasis added). To determine whether Rashid's restitution order is dischargeable under S 523(a)(7), we must determine whether his debt meets the three requirements of the section. We initially conclude that Rashid's restitution obligation is a "fine, penalty or forfeiture" that is "not compensation for actual pecuniary loss."

In Kelly v. Robinson, 479 U.S. 36, 51 (1986), the Court considered whether restitution ordered pursuant to a Connecticut statute was exempt from discharge under S 523(a)(7). Without much discussion, the Court assumed the restitution was a fine and fell within the scope of the first requirement of S 523(a)(7). Although restitution appears to be "compensation for actual pecuniary loss" from the perspective of the victim, restitution is actually something more. "Governments seek restitution to promote law enforcement by deterrence as well as by compensation

8

. . . ." In re Towers, 162 F.3d 952, 955 (7th Cir. 1998), cert. denied, 119 S. Ct. 2340 (1999). That the restitution order corresponds to the loss of the victim and is perceived by the victim to be compensation for his loss does not, without more, prove that the goals of restitution pursuant to the VWPA are strictly compensatory. Requiring that the defendant compensate the victims for their loss

> forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditionalfine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

Kelly, 479 U.S. at 49 n.10 (citation omitted); see Towers, 162 F.3d at 955; see also United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Management of Va., Inc., 64 F.3d 920, 928 (4th Cir. 1995) ("[T]he `not compensation for actual pecuniary loss' phrase in S 523(a)(7) refers to the government's pecuniary loss."). Accordingly, we find that Rashid's restitution order was a fine and was not for the compensation of his victims' actual pecuniary losses.

However, the second requirement, that the amount be "payable to and for the benefit of the governmental unit," is not satisfied. In Kelly, the debtor was required to pay restitution to the Connecticut welfare authority from which she fraudulently received payments. See Kelly , 479 U.S. at 38-39. A governmental unit kept the restitution and deposited the monies into the state treasury. In Kelly, there was no doubt that the restitution was "payable to and for the benefit of a governmental unit." The issue becomes more complex when, as here, the restitution is payable to private victims.

Arguably, restitution paid to a private victim is still paid for the benefit of the Government--i.e., the Government receives the benefit of criminal deterrence. To determine whether restitution owed to private victims is still for the

9

benefit of the Government, an analysis of whether restitution is fundamentally penal or compensatory is helpful but not dispositive. Courts have often considered restitution fundamentally penal.2See United States v. Edwards, 162 F.3d 87, 91 (3d Cir. 1998); United States v. Sheinbaum, 136 F.3d 443, 448 (5th Cir. 1998), cert. denied, 119 S. Ct. 1808 (1999); United States v. Savoie , 985 F.2d 612, 619 (1st Cir. 1993); United States v. Vetter, 895 F.2d 456, 459 (8th Cir. 1990); see also United States v. Bruchey, 810 F.2d 456, 460–461 (4th Cir. 1987) (concluding that VWPA is fundamentally penal in nature but that nevertheless a civil settlement can absolve the defendant of a need to pay restitution). But see United States v. Hampshire, 95 F.3d 999, 1005 (10th Cir. 1996) ("[R]estitution orders issued pursuant to the VWPA are predominantly compensatory.").

In Kelly, the Court also suggested that restitution orders pursuant to the VWPA were penal sanctions. Id.  at 53 n.14. In support of this proposition, the Court commented:

> [t]he criminal justice system is not operated primarily for the benefits of the victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of " the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.

_____

2. Restitution, however, has both compensatory and punitive aspects. See United States v. Edwards, 162 F.3d 87, 91 (3d Cir. 1998). We have previously characterized the VWPA as both compensatory and punitive. Compare Government of Virgin Islands v. Davis, 43 F.3d 41, 47 (3d Cir. 1994) (holding that restitution under the VWPA was more akin to compensation for actual loss than a criminal penalty that may not bear interest) with United States v. Palma, 760 F.2d 475, 479 (3d Cir. 1985) (holding that restitution ordered pursuant to the VWPA was not a separate civil proceeding that required a jury trial but a criminal penalty
that was "an integral part of the sentencing process").

Kelly, 479 U.S. at 52 (1986). Although the Court grounded its opinion on federalism concerns, some courts have found the wording of this section of Kelly broad enough to reach restitution ordered pursuant to the VWPA. See United States v. Cadell, 830 F.2d 36, 39 (5th Cir. 1987) ("[T]he language in the [Kelly] opinion extends generally to penal sanctions of restitution without regard to whether the court imposing the sanction is a state or federal court.").

However, in Towers, the United States Court of Appeals for the Seventh Circuit observed that S 523(a)(7) "offers weak support for exempting restitution orders from discharge" without the aid of federalism concerns because S 523(a)(7) "does not mention restitution, and it operates only if the penalty is `for the benefit of a governmental unit' --a condition not easy to satisfy when the governmental body is collecting for private creditors."3 Towers, 162 F.3d at 954; see also Hughey v. United States, 495 U.S. 411, 419 n.4 (1990) (stating the goal of the VWPA is "compensating victims"). The Court held that the context in which the word " `benefit' appears--`payable to and for the benefit of a governmental unit'--implies that the `benefit' in question is the benefit of the money that is `payable to' the governmental unit." Id. at 956. But see Vetter, 895 F.2d at 459 (holding without comment that Kelly applies to restitution paid to a victim bank); Zajder v. Hill Dep't Store, 154 B.R. 885 (Bankr. W.D. Pa. 1993) (holding restitution paid to a local department store is not dischargeable pursuant to Kelly).

We find the reasoning in Towers persuasive. The word "payable" clearly casts an economic light over the phrase that suggests that the benefit must be conferred from the monetary value of the debt to be paid by the defendant and not the more abstract benefit of criminal deterrence.

Similarly, we would pervert the clear, unambiguous language of S 523(a)(7) if we found that Rashid's restitution

_____

3. Towers concerns a civil rather than criminal order of restitution. Federal criminal restitution orders and civil restitution orders share one important distinction from Kelly--neither implicates the federal court's longstanding "reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgments," Kelly, 479 U.S. at 44.

11

obligation was "payable to" a governmental unit. Although the record is unclear whether Rashid's restitution obligations were to be directly paid to his victims or were to pass through a governmental unit before reaching the victims, it is clear that the benefit--the money--is ultimately payable to the victims. See Towers , 162 F.3d at 955. Accordingly, we find that Rashid's restitution obligation is not exempt from discharge pursuant to S 523(a)(7).

V.

Rashid's remaining arguments do not merit much discussion. He asserts that the forfeiture of the Philadelphia property to the United States was a fraudulent conveyance under 11 U.S.C. S 548 because the prosecution intentionally used perjured testimony to obtain both his conviction and the forfeiture of the Philadelphia property. Compl. P 6. Section 548 permits transfers to be set aside if infected by actual fraud. In such an instance, the debtor must have initiated the transfer "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. S 548(a)(1).

Section 548 covers also constructively fraudulent transfers. Among the elements for a constructively fraudulent transfer is that the debtor "received less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. S 548 (a)(1)(2)(A). We agree that Rashid received nothing--i.e., well below a "reasonably equivalent value"-- when the Philadelphia property was forfeited to the United States. He received nothing from the sale because he lacked any interest in the property. When a forfeiture order is entered, the United States obtains title relating back to the moment of the criminal activity absent a claimant's credible showing that he was an "innocent owner" under the forfeiture statute. See United States v. 92 Buena Vista Avenue, 507 U.S. 111, 125-126 (1993); United States v. One 1973 Rolls Royce, 43 F.3d 794, 818-820 (3d Cir. 1994) (defining the "innocent owner" defense). Rashid has not shown that he was an innocent owner of the Philadelphia

12

property and thus, upon entry of the judicial forfeiture order, the Government's title to the property vested and related back to the time the criminal activity at issue took place. Because Appellant cannot show that he had an interest in the Philadelphia property at the time of forfeiture, see BFP v. Resolution Trust Co., 511 U.S. 531, 535 (1994), his contention must fail. To the extent he seeks to have us revisit the integrity of his conviction, we decline to do so.

Similarly, Appellant's third contention suffers from the same fatal flaw as his second.4 During the pendency of Rashid's appeal of the forfeiture order, but after Rashid filed for bankruptcy, the United States recorded a lien on Rashid's Philadelphia property. During the proceedings in the Bankruptcy Court, the Government conceded that Rashid had some interest in his Philadelphia property during the pendency of his appeal of the forfeiture order.5 The Government's post-petition filing of its judgment was then improper under 11 U.S.C. S 362(a). An injured debtor may only recover actual damages including attorneys' fees for a willful violation of a stay and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. S 362(h).

We agree with the Bankruptcy and District Courts that Rashid cannot allege any injury from the lien. He was incarcerated at the time the lien was in effect and not residing at the property. The Government did not attempt to foreclose on the lien nor did Rashid attempt to mortgage or sell the property. Moreover, once the forfeiture became final, ownership of the premises reverted to the Government from the day that Rashid's criminal activity began. See 92 Buena Vista Avenue, 507 U.S. at 125-26. This preceded the

_____

4. Rashid argued also that the District Court erred in allowing the Government to file its brief out of time. The District Court did not abuse its discretion in accepting the brief out of time"in the interest of expediting decision or other good cause." Bankruptcy Rule 8019; Mar. 26, 1998 Order, at P 8.

5. Because we conclude Rashid's claim must fail even if he did have an interest in the property, we need not decide if Rashid actually had a legal
interest in the Philadelphia property.

date the Government placed a lien on the property.
Accordingly, Rashid's request for damages is without merit
and was properly dismissed.

*   *   *

We will reverse the judgment of the District Court insofar
as it held that Rashid's obligation to pay restitution was not
dischargeable in bankruptcy, and we will remand to the
District Court with a direction to enter an order of
discharge.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14